## W. A. ECKLES v. RAY & LAWYER.

(Filed January 13, 1904.)

1. STATUTES—Construed—Growing Crops. Under the provisions of sec. 8, art. 1, ch. 48, statutes of Oklahoma, 1893, which provides: "An agreement may be made to create a lien on property not yet acquired by the party agreeing to give the lien, or not yet in existence," a mortgage may be given and lien created upon crops to be planted and grown, the planting and growing of which are provided and stipulated for in such mortgage.

2. GROWING CROPS—Mortgaging. Where the lessee of real estate for cash rent, gives a mortgage upon crops to be planted and grown, on the leased premises as security for the contracted rental value, which mortgage is duly executed and filed of record; a sub-lessee

is bound by the terms and conditions of such mortgage, and the crops grown by such sub-tenant as well as the tenant are liable for the rent of said premises.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before Wm. P. Harper, Trial Judge.*

*James L. Brown,* for plaintiff in error.

*Grant Stanley,* for defendants in error.

### STATEMENT OF FACTS.

In October, 1901, one Haug was the owner of a certain farm in Oklahoma county, and one Cole was his agent therefor. In the same month this Cole, for Haug, rented this farm to one Adamson, for the crop year 1902, for the cash rent of $140.00, and the said tenant executed to Cole his note for the amount of said rent, falling due in the fall of 1902, and secured the payment thereof by a chattel mortgage on the crops to be grown on the land during the year 1902, and on certain stock. The lease was filed and indexed as a chattel mortgage, and the chattel mortgage was duly filed in October, 1901, and indexed in the office of the register of deeds, as required by law.

In the spring of 1902 the said Adamson, by the verbal consent of Cole, sub-let to plaintiff in error thirty-five acres of said land. When Cole gave his consent, he verbally stated that "he had no objection to the sub-leasing, provided it did not affect his rights." Cole also verbally employed the plaintiff to break out three acres of new land on said farm, and as compensation therefor, agreed to let plaintiff have the use of the said three acres, so broken out, and three acres in addition, free of rent. The plaintiff planted this six acres in

cotton, and thereon was grown the cotton mentioned in this action.

For the rental of said thirty-five acres, the plaintiff herein agreed to pay to Adamson the sum of fifty-five dollars cash; and cultivated said thirty-five acres in corn, and the corn so grown is the corn in controversy in this action.

Adamson raised little on his part of the land, and about August, 1902, abandoned his family and left the country. Soon thereafter plaintiff in error was garnisheed before a justice of the peace, as a creditor of Adamson, and on order of the court, paid said rent money, $55.00, into court, and it was applied on Adamson's debt to one Arbuckle. Thereafter the plaintiff in error gathered and cribbed his corn, two hundred bushels, on the land where raised, and was in the act of gathering the cotton, when Cole, in November, 1902, commenced proceedings to foreclose this chattel mortgage, given by Adamson as security for rent, and posted notices of sale, and at the time and place set proceeded to sell this corn and cotton of plaintiff in error, to satisfy the notes of Adamson, given for rent. Plaintiff, at that place, and before the sale, gave notice to defendants in error not to buy his corn and cotton, and of his rights therein, but notwithstanding said notice, Cole proceeded with the said sale, and sold his corn and cotton along with that of Adamson to the defendants, Ray and Lawyer.

They demanded from plaintiff the possession of this corn and cotton, as owners thereof, and he refused it. They then brought this action of replevin, in the probate court, and seized said property. The plaintiff gave a redelivery bond, and retained the possession of the property. On the

trial .the probate court made a finding of facts, as above set out, and on these facts so found, held as a matter of law, that the lien of the 'chattel mortgage so given by Adamson to secure the payment of the rent on the whole 160 acres, did not attach to plaintiff's cotton, because it was grown on the six acres, which he (plaintiff in error) was to have rent free, for breaking done, and awarded the possession of the cotton to this plaintiff.

As to the corn, the probate court held, as a matter of law, under the facts found, .that the said chattel mortgage became and was a lien on the corn so raised by plaintiff in error, to the extent and amount of the rent which plaintiff had agreed to pay, as rental to Adamson, and that Cole had the right of law to sell said corn at said chattel mortgage sale to that amount for such rent, and therefore the defendants became and were the owners of the corn, and entitled to the possession thereof, and found that the corn had been sold for $50.00, and was of the value of $100.00, and adjudged the possession thereof to defendants, and in the event of non-delivery that they recover $100.00 and. costs.

To these conclusions of law, and on the facts found, the plaintiff (defendant below) excepted, and also excepted to the judgment, and duly filed a motion for a new trial, which was overruled, to which he excepted.

Opinion of the court by

GILLETTE, J.: Two questions are presented by the plaintiff in error for determination by this court.

First.   Did the chattel mortgage made by Adamson to Cole as agent for Haug attach to and become a lien on

the crops subsequently raised upon the premises by the plaintiff in error?

Second. If it did so attach, then for what amount, and how should that lien have been enforced?

It is urged by the plaintiff in error that the mortgage from Adamson to Cole was not valid, because given on crops that were non-existent at the date of the mortgage, and that Adamson never owned and never had any interest in the crop afterwards grown by the plaintiff in error.

The question as to whether or not a mortgage upon unplanted crops or upon property not *in esse* has often been before the courts, and conclusions reached not altogether in harmony. We think, however, that it is unnecessary to attempt to point out the distinctions that have been drawn, in determining matters of this kind, because the statutes of Oklahoma have settled that proposition. Sec. 8 of art. 1, ch. 48, general statutes of 1893, provides as follows:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such cases the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

The mortgage from Adamson to Cole was an agreement for a lien upon crops to be planted and grown during the year 1902 upon the land leased to Adamson, and was by force of the statute above quoted a lien on such crops when they came into existence.

It is urged by plaintiff in error that he was never indebted to the owner of the land, that his debt was direct to Adamson, and that debt he fully paid in the garnishment

proceedings. This statement overlooks the contract under which he entered into possession of the land, which was an agreement between the plaintiff in error and both Adamson and Cole, by the terms whereof he was permitted to occupy a portion· of the land, such occupancy not to affect the rights of the land owner. Now what were the rights of the land owner? Such rights were enumerated and stipulated for in the mortgage given by Adamson to Cole to secure $140.00, the consideration for the lease.

In this, while he was not a signer of the Adamson note and mortgage, he nevertheless stipulated that his rights under his contract of sub-lease should be subject to the landlord's right under the mortgage of which he had notice from the record, and further notice by reason of the fact that when he applied to Adamson to sub-let a portion of the land, he was informed that this could not be done except with the landlord's consent, which consent was afterwards procured, and accepted with the understanding that such sub-letting should not affect the landlord's rights.

In consideration of this question, counsel for plaintiff in error stop to enquire what would be his right if plaintiff in error had entered upon this land without the consent of the landlord, and urge that he could not in such case be made liable under the mortgage, but would have had his day in court touching the rental value of the ground by him occupied after raising a crop thereon.

This proposition or phase of the case is not before the court. It is sufficient to say that it is not the transaction upon which the rights of the parties are here founded. The statute provides, secs. 11 and 12, ch. 17, of the laws of 1901,

that no tenant shall assign or transfer his term or interest or any part thereof to another without the written consent of the landlord, and if any tenant does so the landlord upon ten days' notice shall have the right to re-enter the premises, and dispossess both the tenant and sub-tenant. The statute then furnishes the reason for an agreement between the landlord and Adamson, the tenant, and Eckles, the plaintiff in error, as sub-tenant, which agreement made the right of the plaintiff in error subject to the terms of the mortgage.

It is urged by the plaintiff in error that under the provisions of the statute of Oklahoma, a chattel mortgage must be in writing signed by the party to be charged thereby, and that the plaintiff in error in accepting a right to occupy a portion of the land as sub-lessee with consent of the landlord, under his verbal declaration "that it would be all right with him if he sub-let a portion of the premises from Adamson with the understanding that his (landlord's) rights in the premises were not altered," would not make the crops raised by him subject to the terms of the chattel mortgage. The statement of the landlord to plaintiff in error above quoted, and the assent thereto followed by taking possession of the premises by the sub-lessee, was not in and of itself a mortgage, but it did amount to a contract by the terms whereof the crops raised by plaintiff in error as sub-lessee, if he went into possession thereunder, should be held liable for the discharge of the conditions of the mortgage given by Adamson. It was an agreement to be performed within a year, and therefore not necessary to be in writing.

The crops to be raised upon the leased premises were already covered by and embraced in the terms of the mort-

gage then existing, made and executed by Adamson, and when plaintiff in error took a portion of the leased premises, with full notice and knowledge of this mortgage, he took it precisely as he would take any other property already covered by a chattel mortgage, whether he took as purchaser, lessee, bailee or otherwise; and the right thus secured remains subject to the mortgage and to the terms and conditions thereof, liable to foreclosure in the hands of the purchaser or bailee, the same as though possession remained in the mortgagor. It is true that in such a case the property mortgaged was not *in esse* when the mortgage was given, but the purchaser, hirer or bailee, with knowledge of the mortgage, could not destroy the mortgage lien, by adding to the value of the property by improvement and great increase of value. The mortgage right in such case would remain the same, and the property subject to foreclosure, notwithstanding the increased valuation.

Without possession of the original mortgaged property, this increase of valuation could not have been made. The contract of purchase or bailment gave the opportunity. So in the case before us a right of possession to property was acquired, and the right through such possession to produce a crop of value, and it is this crop and the right to produce it which was mortgaged by Adamson. The plaintiff took possession, and undertook to produce a crop subject to the terms of the mortgage, which was that the property so produced should stand liable for the rental value of the entire tract, and he is liable under the terms of his contract. That it is a hardship, no one will deny. The court in all such instances would be pleased to give relief, where relief can be granted

without violating the terms and conditions of the contract which the parties have made; but it is the province of the court to interpret and construe, but they may not change the agreement of the parties, and this, notwithstanding the fact that unforeseen conditions have arisen, since making the same, which work a hardship.

In this case, all of the crops produced by the tenant and sub-tenant were sold under the chattel mortgage of Adamson for a sum less than the amount the sub-tenant, plaintiff in error, agreed to pay, and no complaint is made that the procedure in selling was not in strict accordance with the terms of the mortgage. It is therefore useless to consider the question as to whether or not the crops of the sub-tenant and tenant should have been sold separately.

The judgment of the court below must be affirmed with costs.

All the Justices concurring.