[No. 20227.   Department Two.   April 19, 1927.]

THIRD NATIONAL BANK OF WALLA WALLA, *Respondent,* v. EBER KNIFFEN *et al., Defendants,* W. F. ESLICK, *Appellant.*[1]

[1] CHATTEL MORTGAGES (37)—PRIORITY OF LIEN — EXTENT — SUBSEQUENT LESSEE. A crop mortgage, given by a lessee prior to the seeding of an annual crop, does not give a valid lien where, before the seeding, the lessee surrendered his lease and the crop was seeded and grown by his successor; notwithstanding Rem. Comp. Stat., § 3779, providing that the mortgage of crops before the seed shall have been sown or planted for more than one year in advance is forbidden, unless the crops are to be sown or planted within one year from the time of the execution of the mortgage; since the mortgagee acquires only the interest of the tenant, subject to be lost on termination of the lease.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered February 27, 1926, upon findings in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Reversed.

*Sharpstein, Smith & Sharpstein,* for appellant.

*J. G. Thomas* and *W. A. Toner,* for respondent.

[1] Reported in 255 Pac. 378.

ASKREN, J.—In 1924, the defendant Kniffen was in possession of certain farm lands in Walla Walla county, under a lease from the owner, Collins.

He was indebted to the plaintiff in the sum of approximately $12,000, and to secure the debt, executed a mortgage in March, 1924, to the plaintiff covering the crop of wheat to be sown in 1924, and harvested in 1925.

He summer-fallowed the land preparatory to the seeding of the same in the fall. Before the crop was planted, however, he executed a written release of his rights to his landlord, Collins, who, in turn, executed a new lease to the defendant Eslick. Eslick then took possession of the land, seeded the crop and harvested it. The bank then brought suit to recover the value of the crop amounting to $5,860.40, claiming under its mortgage of March, 1924, and the trial court entered judgment for that amount. Eslick appeals.

The trial court found that there had been no voluntary surrender of the lease by Kniffen, but that he had turned over his rights in the property and received the sum of $2,100, and that Eslick, when he took over the lease, did so with full knowledge of the mortgage of the bank and that therefore he stood in Kniffen's shoes so far as the mortgage being a lien on the crop was concerned.

[1] Upon appeal, two points are urged. First, that the evidence does not justify a finding that Eslick took over the lease from Kniffen, but does show conclusively that Kniffen released his rights to Collins, and Collins dealt directly with Eslick; and secondly, that in either event the mortgage could not be a lien upon the crop sown and harvested by Eslick.

Inasmuch as the conclusion which we have come to on the second assignment is decisive of the case irre-

spective of our conclusion as to the first assignment of error, we shall only discuss it. This assignment presents a clear cut question, to wit: Is a chattel mortgage given prior to the seeding of an annual crop a valid lien upon a crop thereafter grown upon the land, whether grown by the mortgagor or a third party?

The question is a nice one, and the answer not at all obvious. The right to execute a chattel mortgage upon the crop before it is sown is given by Rem. Comp. Stat., § 3779 [P. C. § 9759], as follows:

"Mortgages may be made upon all kinds of personal property, and upon the rolling stock of a railroad company and upon all kinds of machinery, and upon boats and vessels, and upon portable mills, and such like property, and upon growing crops and upon crops before the seed thereof shall have been sown or planted: *Provided,* That the mortgaging of crops before the seed thereof shall have been sown or planted, for more than one year in advance, is hereby forbidden, and all securities or mortgages hereafter executed on such unsown or unplanted crops are declared void and of no effect, unless such crops are to be sown or planted within one year from the time of the execution of the mortgage."

Upon this statute the respondent predicates the validity of its mortgage and urges that it became a lien from the date of its execution and filing. However, it must be borne in mind that, while the mortgage is valid from that date, it does not attach until the thing that it mortgages has come into being. For instance, if no crop is sown there is nothing that the mortgage can attach to, for the summer-fallow is no part of the crop and no foreclosure could be had upon it. *Farmers & Merchants Bank v. Small,* 131 Wash. 197, 229 Pac. 531. Or, if the tenant be ousted by his landlord and the landlord raise a crop either personally or by lease or rental to a third person, then the mortgage cannot attach, for there is nothing there of the mortgagor's

that can be foreclosed. So it will be seen that while the validity of the mortgage may be admitted, there must be something for it to operate upon.

The theory of the cases which uphold statutes of this character is that one has a right to execute a mortgage on a thing not yet in being, but which shall attach to that thing if, as and when the mortgagor brings it into being. The supreme court of Montana had this question before it in the case of *Isbell v. Slette,* 52 Mont. 156, 155 Pac. 503:

"Independently of statute (sec. 5712, Rev. Codes), one cannot sell or mortgage personal property not in existence or in which he has no present interest. *Bernard v. Eaton,* 2 Cush. (Mass.) 303; *Farmers' L. & T. Co. v. Long Beach Imp. Co.,* 27 Hun. (N. Y.) 89. But it is quite generally held that property which has a potential existence may be mortgaged or hypothecated (*Arques v. Wasson,* 51 Cal. 620, 21 Am. Rep. 718; 5 R. C. L. 405; 6 Cyc. 1045), and the same authorities hold that annual crops have a potential existence even before they are planted, and that the owner or one rightfully in possession of land has a mortgageable interest in the crops thereafter to be planted on such land (*Arques v. Wasson,* above; Jones on Chattel Mortgages (5th ed.) sec. 143; Cobbey on Chattel Mortgages, sec. 384; 6 Cyc. 1046). It goes without saying that the lien of such a mortgage cannot attach until the crops come into existence, until they are planted, and the decided weight of authority and the better reasoning limit the extent of the lien to the interest which the mortgagor then has. Jones on Chattel Mortgages, sec. 143a; Cobbey on Chattel Mortgages, sec. 388.

"Speaking of a mortgage on crops thereafter to be planted, the supreme court of Iowa said:

" 'While there was nothing upon which the mortgage could operate at the time of its execution, it did attach to the property when it came into existence.' (*Wheeler v. Becker,* 68 Iowa 723, 28 N. W. 40.)

"In our opinion, such a mortgage is, in effect, noth-

ing more than an executory contract which may become executed when the crops are planted and the lien attaches, or defeated if for any reason the mortgagor violates faith and fails or refuses to plant the crops.''

In *Simmons v. Anderson,* 44 Minn. 487, 47 N. W. 52, it was sought to enforce a right under a chattel mortgage given by one Maxwell, owner of certain lands on the crop to be raised thereon during the current year. Two weeks later, he leased the premises to a tenant who planted and harvested the crop and the mortgagee claimed that the mortgage covered the crop. The court said:

''About April 1st following, Maxwell leased the premises to defendant, who went into possession, and sowed, raised and hence presumably owned, the crops. It does not appear that Maxwell ever had any interest in them. How plaintiff could expect to recover on such a state of facts it is difficult to conceive. When a person takes a mortgage on property in being, he acquires only the interest which the mortgagor has in it; and if he, as in this case, takes a mortgage on property not then in being, or owned by the mortgagor, it can attach only to such property as the mortgagor thereafter acquires. A chattel mortgage on crops to be thereafter grown gives the mortgagee no interest in or lien upon the land. It attaches as a lien only on the interest which the mortgagor may have in the crops when they come into being.''

In *Gammon v. Bull,* 86 Iowa 754, 53 N. W. 340, an action was brought to foreclose a mortgage given by Bull upon a crop to be grown in the year 1890. In the fall of 1889 he prepared the land by plowing for the crop. In April, 1890, and before the crop was sown, the owner executed a new lease to Mrs. Bull, who seeded the land and harvested the crop. It was held that although Bull had acquired certain rights as a tenant in the land, yet he had acquiesced in the lease to his wife, and since he had no rights in the farm in 1890 the holder

of the mortgage acquired no interest therein by virtue of the mortgage.

To the same effect is *Christianson v. Nelson*, 76 Minn. 36, 78 N. W. 875, 79 N. W. 647; *Donovan v. St. Anthony & Dakota Elev. Co.*, 7 N. D. 513, 75 N. W. 809; 11 C. J. 444; Jones on Chattel Mortgages (5th ed.), 1439.

Respondent has relied upon the decision in *Hall v. Glass*, 123 Cal. 500, 69 Am. St. 77. The specific point there decided was that a mortgage on a crop to be grown was valid, and that when the crop was raised by the mortgagor foreclosure might be had, even though the mortgagor had gone through insolvency proceedings. Reliance is also had on *Eckles v. Ray & Lawyer*, 13 Okl. 541, 75 Pac. 286, where the tenant had subleased a portion of the land on which he had given a mortgage to his landlord. The court held the crop raised by the sub-lessee to be covered by the mortgage, but placed it expressly upon the agreement entered into at the time of the sub-letting, which was that it "was not to affect his (the landlord's) rights."

These cases relied upon by respondent are not, as we view them, opposed to our view of the law. Nor are the views herein expressed contrary to *First National Bank v. Womach*, 128 Wash. 492, 223 Pac. 586, where we held that a purchaser of a mortgagor's interest at execution sale did not extinguish the lien of the mortgage, for, in that case, the crop had been planted and the mortgage had attached.

Much has been said in respondent's brief of the loophole permitting dishonest tenants to secure money from mortgagees and then just before planting time sell their interest to others and leave the mortgagor remediless. This fault, if it be a fault, is one that the courts are powerless to protect against. The lender, at least to some extent, knows that he is advancing money upon

the character of the individual because the borrower, as we have seen, may forfeit or abandon his lease as he sees fit, and if he may do those things we see no reason why he may not sell or assign his leasehold when there is nothing there to which the chattel mortgage can attach.

Judgment reversed.

MACKINTOSH, C. J., PARKER, and TOLMAN, JJ., concur.