*550
 
 Parker, J.
 

 The plaintiff bank, claiming to hold a chattel mortgage upon a quantity of wheat to secure an unpaid indebtedness owing to it, seeks recovery of damages from the defendant elevator company claimed as the result of its conversion and appropriation of the wheat to its own use. A trial upon the merits in the superior court for Adams county, sitting without a jury, resulted in findings and judgment denying to the bank recovery, from which it has appealed to this court.
 

 The controlling facts, we think, may be fairly summarized as follows: On April 7, 1927, the bank, being the owner of a tract of land in Grant county, entered into a contract in writing with Ben Madison for the sale of the land to him, the agreed purchase price to be paid in annual installments, the first agreed installment being $750, payable on October 1,1928. It was therein agreed that Madison should execute to the bank a chattel mortgage on the crop to be grown on the land during the crop season of 1928, to secure the payment of the first installment. Thereafter, upon the same day, Ben Madison duly executed to the bank the chattel mortgage as agreed. The sale contract was never placed of record in the office of the auditor of Grant county, and the elevator company had no knowledge of the existence of the sale contract or of any interest or claim of interest in the land or crop on the part of Ben Madison until after it had purchased and paid for the wheat in question. The chattel mortgage was, however, duly placed of record in the office of the auditor of that county soon after its execution; indexed, of course, as having been executed by Ben Madison. Ben Madison never raised any crop upon the land, nor did he ever go into possession of the land or any part thereof.
 

 Soon after the execution of the sale contract and the
 
 *551
 
 chattel mortgage, Ben Madison decided that he would not take the land under the sale contract. He then turned over to his brother, Prank Madison, his copy of the sale contract, not, however, making any formal assignment thereof, telling Prank, in substance, that he, Prank, could take it to the bank and have the bank make a new sale contract with him. Prank then took it to the bank and informed the bank of Ben’s conclusion not to take the land, and also informed the bank that he, Prank, would not contract to purchase the land except upon more favorable conditions than were specified in that sale contract. The talk there had did not result in any new sale contract, but it was agreed between Prank and the bank that he should go upon the land, prepare it for crop by summer fallowing, and raise a crop thereon during the crop season of 1928, and if they could not, on further consideration, agree upon the terms of a new sale contract, he should, while so occupying the land, be considered as a renter thereof. Ben was not present during any of these negotiations between Prank and the bank, manifestly having abandoned all concern as to his purchase of the land.
 

 Later, in the fall of 1927, the bank loaned Prank $350 to enable him to then plant fall wheat upon the land, he having then prepared it therefor by summer fallowing. He accordingly then planted a crop of fall wheat thereon, and in January, 1928, paid that indebtedness to the bank. Prank cared for the crop and harvested it in the fall of 1928, the total crop amounting to 400 sacks of wheat, which he delivered to the warehouse of the elevator company, and sold to' the elevator company four-fifths thereof, 320 sacks, as his own property, and left in storage with the elevator company one-fifth thereof, 80 sacks, for payment of rent of the land. This one-fifth was a fair crop rent
 
 *552
 
 for the land and the nsnal crop rent collected by-owners from renters farming as Frank had farmed the land. While Frank had gone into the possession of the land and farmed it by virtue of the agreement with the bank, there seems to have arisen some controversy as to whether the bank or Ben was entitled to the one-fifth of the wheat as the rent. So Frank instructed the elevator company to deliver receipt therefor to whichever was entitled to it. The bank thereafter, instead of litigating the question of title to the one-fifth of the wheat, foreclosed its chattel mortgage against that portion of it, treating it as Ben’s wheat, the bank having at least that right as against Ben. . Thereafter on December 12,1928, the bank commenced this action against the elevator company seeking damages against it for conversion of the 320 sacks of wheat it- purchased from Frank as the owner thereof.
 

 The contentions of counsel for the bank seem to be rested upon the theory that, since the chattel mortgage given by Ben to the bank upon the crop
 
 “to
 
 be grown during the crop season of 1928” was a valid mortgage under Bern. Comp. Stat., § 3779, though the crop was not then planted, any future planted or produced crop upon the land in the year 1928 would be wholly subject to the mortgage, though rightfully planted and produced by someone on his own account other than Ben, the mortgagor. In any event, this is the contention which must be successfully made in order to render the four-fifths share of the 1928 crop produced by Frank subject to the mortgage given by Ben to the bank. We think our decision in
 
 Third National Bank v. Kniffen,
 
 143 Wash. 434, 255 Pac. 378, in effect, squarely holds to the contrary of this contention. Our possibly somewhat unnecessarily detailed summary of the facts of this case, we think, makes it clear that Frank did rightfully, on his own
 
 *553
 
 account, plant and produce the 1928 crop upon the land in legal effect as the tenant of the bank as between him and the bank. This is enough to entitle him to the ownership of the four-fifths of the crop so produced by him, as against the bank, and free from its mortgage lien. In view of the understanding between Frank and the bank, in pursuance of which he went into possession of the land, planted and produced the 1928 crop thereon, it is of no consequence in our present inquiry what the relative legal rights of Ben and the bank were as between themselves.
 

 The judgment is affirmed.
 

 Mitchell, C. J., Beals, Millard, and Tolman, JJ.. concur.