[No. 18448.    Department Two.    October 21, 1924.]

FARMERS AND MERCHANTS BANK OF WALLA WALLA,
*Appellant*, v. RAY L. SMALL et al., *Defendants*,
F. A. JONAS, *Trustee, Respondent.*[1]

CHATTEL MORTGAGES (43)—PRIORITY—NOTICE OF MORTGAGE—EVI-
DENCE.  Actual knowledge, outside the record, by a crop mortgagee
for the year 1922, that a previous mortgage of all the mortgagor's
interest in "and to the summer fallow" for the year 1921 was in-
tended to cover the crop in 1922, is not shown where the hazy re-
membrance by one witness of a conversation to that effect is strongly
contradicted by other witnesses.

CHATTEL MORTGAGES (30-36)—CONSTRUCTION—INTENT OF PARTIES
—PROPERTY INCLUDED—CROPS.  As against third persons, the crops to
be raised in 1922 are not covered by a chattel mortgage upon "all
interest of the mortgagor in and to the summer fallow" to be pre-
pared by the mortgagor during the year 1921" on leased lands, re-
citing that the interest of the mortgagor is an undivided two-thirds
interest therein.

SAME (50)—SALE BY MORTGAGOR—CONVERSION—DAMAGES—VALUE
OF PROPERTY—EVIDENCE.  The measure of damages for the inadvertent
conversion of a crop of wheat by a mortgagee in possession, is the
value at the time of the conversion; and where it was raised under
a stipulation allowing the mortgagee repayment of sums necessar-
ily advanced by it to harvest and store the wheat, and it sold it in
good faith in the belief that it had a right to do so under its mort-
gages, it cannot be required to account to a second mortgagee for
the amount of the increased price of the wheat shortly after the
sale.

Cross-appeals from a judgment of the superior
court for Columbia county, Miller, J., entered October
4, 1923, upon findings favorable to the defendant, in
an action to foreclose chattel mortgages, tried to the
court.    Affirmed.

*Grant S. Bond,* for appellant.

*S. H. Cutting* and *Will H. Fouts,* for respondent.

[1]Reported in 229 Pac. 531.

BRIDGES, J.—The respondents Small and wife were the lessees of a large tract of farm land in Eastern Washington. They desired to summer fallow some 500 acres thereof during the year 1921, and borrowed certain sums of money from the appellant to be used, and which for the most part were used, in that connection. To secure this indebtedness, Small and wife gave to the appellant a chattel mortgage covering, in addition to some farm implements, "all interest of the mortgagor in and to the summer fallow to be prepared by the mortgagor during the year 1921," on certain particularly described lands in Columbia county. The mortgagor was to have an undivided two-thirds interest in the crops to be raised on the leased property. This mortgage was dated March 7, 1921, and was in all respects properly executed and was filed as required by law. On July 9 of the same year, Small gave appellant another mortgage on the same property to secure additional advancements. In October of the same year, he gave to the respondent Jonas a mortgage which covered "an undivided two-thirds interest in the 1922 crop of wheat or other grain" to be raised on the lands described in the mortgages to the appellant. This mortgage was also properly executed and was filed as required by law.

The lands in question were, in 1921, summer-fallowed by the respondent Small, and in 1922 a crop of wheat was raised thereon. A legal controversy arose between the appellant and the respondent Jonas as to who had the first mortgage lien on the 1922 crop of wheat. Pending litigation of this controversy, a stipulation was entered into by the parties to the effect that the appellant was authorized "to advance such sums as may be actually necessary to harvest and place in the warehouse the wheat crop of about 500 acres involved in this action, such advances in the

aggregate not to exceed the sum of $3,000.     .     .
." It further provided that "when said crop is
sold the plaintiff (appellant) shall be reimbursed for
all such advances made pursuant hereto and in accord-
ance with the terms hereof." Under this stipulation
the appellant advanced $3,000, and it also paid $284.40
additional to release certain labor liens which had been
filed on the crop. After the wheat was threshed, the
mortgagor, with the knowledge and consent of ap-
pellant, sold it at 95½ cents per bushel, which was the
market price. The appellant, having possession of
the money, repaid itself the $3,000 which it had ad-
vanced under the stipulation and also the amount of
the labor liens, leaving a balance in its hands of
$2,525.21. The main question is whether appellant or
the respondent Jonas is entitled to that sum.

The answer to this question depends entirely upon
the construction to be given the appellant's mortgages,
and also whether respondent Jonas, at the time he
took his mortgage, had actual knowledge that it was
the intention of appellant's mortgages to cover the
crop in question. The trial court determined that, as
against respondent, appellant's mortgages did not
cover the wheat crop.

The main question involved is a novel one and its
solution is not easy. We have been greatly assisted
by the excellent briefs presented on both sides. Ap-
pellant first insists that the testimony shows that, at
the time the respondent took his mortgage, he had
actual knowledge that it was the intention of the
parties that the mortgages given to the appellant were
to cover not only the summer fallow for the year 1921,
but also the crop of wheat to be grown on the same
land during the year 1922. On the contrary, the re-.
spondent contends that he had no such knowledge,
and had no notice other than such as he obtained from

a reading of the record of appellant's mortgages. The testimony concerning actual notice is not very satisfactory. The impression we receive from a reading of the mortgagor's testimony is that his remembrance on this point is exceedingly hazy and that he had nothing more than a general impression that he told the respondent that there was a previous mortgage against the property. The respondent unqualifiedly denies that there was any conversation whatever about previous mortgages on the 1922 crop, and in this he is quite strongly supported by the testimony of another witness. The trial court refused to find that the respondent had any notice concerning the appellant's mortgage other than that which he obtained from a reading of the record. The testimony on this question is short and we have read it with great care and do not feel we would be justified in overturning the conclusion which the trial court reached. On the contrary, we are impressed with the view that, at the time of respondent's mortgage, there was nothing said concerning any previous mortgage on the crop.

It is the law that every person must not only take notice of the exact contents of mortgages which are properly of record, but also of such reasonable inferences as should be drawn therefrom. It is perfectly plain that the mortgages in question do not, in express terms, include the 1922 crop, and if it is to be held that respondent had notice that they did include that crop, it must be because such would be a reasonable inference to be drawn from the language of the mortgages.

Summer-fallowing is the plowing of the ground and the harrowing of it during one season preparatory to sowing it for crop during the next season. The mortgages here expressly cover "the summer fallow to be prepared by the mortgagor during the year 1921."

Nothing whatever is said, nor is there any intimation, that any crops to be grown on the land were mortgaged or intended to be. It is not a question of an uncertain description of the mortgaged thing. It is a definite description of the summer fallow and a complete failure to mention anything else. It is a failure to even attempt to describe the crops, not a defective description. Nor does the expression, "the interest of the mortgagor being an undivided two-thirds interest therein" help the situation, because it necessarily refers to the earlier part of the mortgage, which according to its terms covered only the summer fallow.

Appellant forcibly argues that the fact that it took a mortgage is evidence that it was the intention to mortgage something of value, and to say that only the summer fallow was mortgaged is to say that nothing was mortgaged, and that it must have been manifest that the intention was to mortgage the crop for which the summer-fallowing was to be prepared. The argument would be strong were the issue between the parties to the instruments. But we cannot say that a mere reading of the mortgages would lead to the belief that they covered the crops, something in no manner referred to therein. If we may add something to these mortgages simply because the thing particularly described therein does not furnish adequate security, then, for like reasons, we will, in other cases, be called upon to do the same thing. The intent of the parties to an instrument must be made manifest from the language used, and that used here does not call for the presumption that the crop was covered. If there were anything in these mortgages which even by general terms had some reference to the crop to be grown we would, under the circumstances, be strongly disposed to accept the appellant's view. It would have been exceedingly simple to have included the crop in the mortgage

if such had been the intention. After much delibera-
tion we have come to the conclusion that, as against
the respondent, the mortgages did not cover the 1922
crop. To hold otherwise would be to read something
into the record which is not there, and set a precedent
which would be exceedingly dangerous.

The foregoing disposes of the original appeal, but
the respondent has cross-appealed, claiming, among
other things, that within a short time after the appel-
lant and the mortgagor sold the wheat for 95½ cents
per bushel, the price advanced to $1.12, and that he is
entitled to recover that difference from the appellant,
claiming that the trial court erred in refusing to give
it to him. This difference amounts to nearly $1,200.

It seems to us that there are several reasons why we
cannot accept respondent's view of this question. In
the first place, we have not seen, nor has our atten-
tion been called, to any testimony which would support
a judgment for the so-called increased price of the
wheat. It is true that one of the witnesses testified
(probably the only one who testified on that question)
that wheat was worth $1.12 per bushel, but this answer
was given to the following question: "From your in-
formation and knowledge as a dealer in wheat, what
has been the highest market value of wheat from Sep-
tember, 1922, to the present time." This is far from
proving the value of this particular wheat. Other
wheat might have been worth $1.12 per bushel and
this particular wheat worth more or less. Again, the
stipulation above mentioned authorizes the appellant
to advance not to exceed $3,000 for the purpose of
harvesting the wheat, and provided that, when the crop
was sold, it should have the right to reimburse itself.
It seems to us that, in the absence of anything in the
stipulation to the contrary, the appellant was entitled
to have the wheat sold at the best price obtainable

under all the circumstances, and to sell it when it saw fit, provided it acted in good faith. The testimony is quite clear that, before the wheat was sold, much inquiry was made concerning its present and probable future value, and there is nothing to indicate that it could have been known at that time that later wheat would advance in price. But there is another reason why respondent's contention cannot prevail. In *Gunstone v. Chicago, Milwaukee & P. S. R. Co.*, 79 Wash. 629, 140 Pac. 907, 52 L. R. A. (N. S.) 392, we held that where a conversion was inadvertent and not wilfull, the measure of damage was the value of the thing converted at the time and place of the conversion. This case comes within the rule there announced. The appellant was acting in good faith when it disposed of the wheat in the belief that it had a right so to do under its mortgages.

It is further contended that some hay was raised on this land which was covered by respondent's mortgage and which was converted by the appellant, and that the court erred in not giving judgment against appellant for its value. A reading of the record convinces us of the correctness of the trial court's finding to the effect that the hay was cut by respondent Small and was used by him and that the appellant "did not receive any of the said hay and did not assume any liability therefor."

We do not deem it necessary to discuss at length the contentions of cross-appellant that the trial court erred in allowing the appellant to deduct certain other items. A reading of the record convinces us that the court's action was right. The judgment is affirmed.

MAIN, C. J., MITCHELL, PEMBERTON, and FULLERTON, JJ., concur.