[No. 21539. Department Two. May 9, 1929.]

JOHN POTTS, *Respondent,* v. ISABELLA MACDONALD, *as Administratrix, Appellant.*[1]

[1]Reported in 277 Pac. 374.

*Post & Russell,* for appellant.

*Le Roy McCann,* for respondent.

PARKER, J.—The plaintiff, Potts, commenced this action in the superior court for Lincoln county, seeking recovery of compensation in the sum of $1,000 from the defendant, Miss MacDonald, as administratrix of the estate of her deceased brother, James MacDonald, for summer-fallowing five hundred acres of a large grain farm belonging to the estate while it was occupied by Potts as a tenant. Trial upon the merits in the superior court, sitting without a jury, resulted in findings and judgment awarding to Potts recovery in the sum of nine hundred dollars, and denying to Miss MacDonald, as administratrix, recovery upon her cross-complaint, from which judgment she has appealed to this court.

On October 1, 1915, James MacDonald leased to Potts his large grain farm of approximately 1117 acres, about 1085 acres of which were under cultivation, suitable for the growing of grain. The remaining small portion of the farm was occupied by farm buildings and pasture. They entered into a written lease contract, using a somewhat elaborate printed form therefor, a considerable portion of which, including the unfilled blank spaces therein, is manifestly of no application to their real contract, since the contemplated use of the farm by Potts was only as a grain farm. The only portions of the lease which need be here particularly noticed, read as follows:

"THIS AGREEMENT, made this *1st* day of *October,* 1915, between *James Macdonald,* party of the first part, and *John Potts,* party of the second part,

"WITNESSETH, That the party of the first part hereby leases unto the second party for............................from the *1st* day of *Oct.,* 1915, the following lands, . . .

All work tools and equipment necessary to carry out the terms of this lease in first-class, farmer-like manner, and in proper season therefor, including seed, shall be done and furnished at the expense of the second party. Second party is to sow to grain such parts of said lands as are fit therefor, . . . First party is to receive and be entitled to the following proportion of the products raised on the said premises, to wit: Wheat *1/3,* Oats *1/3,* . . .

"Second party agrees to plow, summer-fallow and harrow *One half of land leased* during the summer of *1916,* . . . It being understood that this land is being offered for sale, it is agreed that if a sale of the land is made, and the purchaser demand immediate possession, this lease may be declared void and of no effect by said Lessor giving three days' notice of such sale, and by paying said Lessee a reasonable price (not exceeding *$2* per acre) for all labor expended in preparing any ground not in crops, and on further payment of the value of any crops which may be growing or immatured. If the parties hereto cannot agree as to such value it shall be left to three arbitrators, whose decision shall be final, one to be chosen by each party hereto, they to choose the third."

We have italicized the above quoted written words and figures. All of the other quoted words and figures are printed. It will be noticed that there is no specified term inserted in the blank space provided therefor in the printed form. However, the parties have, at all times in question, regarded the lease as being one from year to year, subject to be terminated by timely notice at the expiration of each yearly term. While the lease does not, in terms, provide for cropping and summer-fallowing different portions of the land alternately every other year, such was the manner of farming the land by Potts and as manifestly contemplated by the parties. Accordingly, Potts went into possession of the farm. There were then 500 acres of the land which

MacDonald had caused to be summer-fallowed during the summer of 1915; that portion not being cropped that year, but then so made ready for cropping in the year 1916. Potts paid to MacDonald $1,000 for this summer-fallowing. While the lease makes no mention of this, it was a part of the lease transaction.

' Potts remained in possession of the farm until October 1, 1922, the end of the seventh yearly term under the lease, when his tenancy was terminated by appropriate timely notice given to him by Miss Mac-Donald, the administratrix of the estate of her deceased brother, James MacDonald, the original lessor, who died December 2, 1921. During each year of Potts' occupancy of the farm, he raised a grain crop on approximately one-half of the cultivated portion of the land, and summer-fallowed the whole of the remaining half of the cultivated portion of the land. This he did in the summer of 1922, then summer-fallowing 450 acres of the cultivated portion of the land and raising a grain crop on the whole of the remainder of the cultivated portion of the land. Potts, being deprived of the benefit of this summer-fallowing, in that he was prevented from raising a crop in 1923 by the termination of the tenancy on October 1, 1922, by notice from Miss MacDonald after the completion of the summer-fallowing, seeks recovery of compensation therefor from Miss MacDonald, as administratrix, claiming that there were 500 acres of such summer-fallowing which was of the reasonable value of $2 per acre.

We note that, while the lease required Potts to summer-fallow one-half of the land, it does not, in terms, make any mention as to whether or not he should be compensated therefor. Assuming the language of the lease to be uncertain and ambiguous touching this

question, counsel for Potts introduced proof, and the trial court found, that, upon taking possession of the land, Potts paid to MacDonald for the summer-fallowing then upon the land, the sum of $1,000. This fact was brought into the case by the evidence introduced in behalf of Potts as tending to show that he was entitled to be compensated for the summer-fallowing he left upon the land at the termination of his tenancy.

It seems plain that the provision of the lease that Potts should summer-fallow one-half of the land during the summer of 1916 was carried forward as a provision of the renewed lease each year, and by such carrying forward, the words "during the summer of 1916," meant, with reference to each succeeding year of the tenancy, during the summer of that year; and hence meant in 1922, the last year of the tenancy, "during the summer of 1922." This, we understand, is conceded by the parties. Noticing all of the provisions of the lease above quoted, it might well be argued that the rental of the land was to consist only of the one-third portion of the wheat and oats raised by Potts thereon. However, when we consider this uncertainty in the terms of the lease, the fact that Potts paid MacDonald $1,000 for the 500 acres of summer-fallowing upon the land at the time he took possession in the fall of 1915, we think the uncertainty in the terms of the lease as to Potts being entitled to compensation for summer-fallowing left by him upon the land at the termination of the lease, is cleared up and rendered to mean that Potts became entitled to compensation for such summer-fallowing upon the termination of the lease.

The trial court awarded to Potts recovery in the sum of $900, instead of $1,000, as claimed by him; this upon the theory that he had left only 450 acres of summer-

fallowing upon the farm on October 1, 1922, which, at the reasonable value of $2 per acre, amounted only to $900. Contention is made in behalf of Miss Mac-Donald that this award should have, in any event, been further reduced and made upon the basis of 430 acres of summer-fallowing. This presents only a question of fact as to the quantity of summer-fallowing. The evidence, we think, fully supports the conclusion reached by the trial judge that Potts left 450 acres of summer-fallowing.

As to the cross-complaint of Miss MacDonald, it consists of a claim for damages as against Potts for his failure to summer-fallow an entire one-half of the cultivated portion of the land, which would be approximately 540 acres; and also a claim rested upon his alleged failure to account for the portion of the crop which MacDonald and his estate were entitled to in 1922, and some former years. As to the claim of damage for failure on the part of Potts to summer-fallow the whole of one-half of the land in 1922, instead of only 450 acres, we think a sufficient answer is found in the fact that the whole of the balance of the land was cropped that year, by consent of Miss MacDonald, the administratrix, and the fact that Potts duly accounted for and delivered to her one-third of that crop. It seems plain to us, under the evidence, that the estate did not suffer any damage by reason of the failure of Potts to summer-fallow more than 450 acres of the land, that being all that could then be summer-fallowed without disturbing the growing crop, and the estate having received one-third of the crop upon the whole of the remainder of the land. As to the claim of damage rested upon the alleged failure of Potts to account for one-third of the crops of 1922 and former years, we think the evidence wholly fails to show any such failure on his part. Upon both of these

120

contentions, we think the evidence fully supports the denial of any recovery in favor of Miss MacDonald, the administratrix, upon her cross-complaint.

The judgment is affirmed.

MITCHELL, C. J., MAIN, FRENCH, and MILLARD, JJ., concur.