[Civ. No. 4867. Third Appellate District.—November 21, 1933.]

JESSE MAY, Appellant, v. AMERICAN TRUST COM-
PANY (a Corporation), Respondent.

James R. McHenry and Edward Bickmore for Appellant.

Brobeck, Phleger & Harrison and Moses Lasky for Respondent.

PARKER, J., *pro tem.*—The action was to recover money alleged due from defendant to plaintiff arising out of certain transactions between the parties, of which more detail hereinafter.

The case was tried by the court sitting without a jury, and judgment went for defendant, by the terms of which judgment plaintiff recovered nothing. From this judgment plaintiff appeals.

Appellant, to use his own language, raises only one point, and that is as follows: That the evidence received by the court and the evidence improperly excluded by the court, if the latter evidence had been received, established or would have established conclusively that plaintiff is entitled to the relief demanded in his complaint, and that

the findings and judgment of the court in favor of defendant are not sustained by the evidence so admitted, and that which should have been admitted. This one point is all-embracing and leaves little else to be said about the judgment and the ground of appeal.

The record presents what might be called an argumentative appeal. In the opening brief of appellant there is not one single citation of authority, and in the final brief one authority is cited upon a point not disputed, as a matter of law.

· The plaintiff, in the year 1925, leased certain lands from one Law. This land, it seems admitted, was of an area totaling in excess of 1,000 acres, though the lease in evidence refers to the demised premises as being in extent 400 acres, more or less. This lease was for the period of one year, and was renewed through riders and other agreements up to September, 1928.

These premises owned by Law were impressed with a trust deed given to secure certain indebtedness to the defendant. In 1928, the defendant, through appropriate proceedings, caused the lands to be sold under the trust deed, and thereafter, on May 7, 1928, defendant became the owner of the lands.

It might be here noted that, as is usual in such cases, the defendant for some time prior to the actual foreclosure on the indebtedness, anticipated that such foreclosure would be necessary, and the testimony in some particulars indicates that it made and was making preparations that would forestall neglect or waste.

On September 25, 1928, plaintiff and defendant entered into a lease agreement by the terms of which defendant leased to plaintiff approximately 1,000 acres of land for farming purposes for the period of three years ending August 31, 1931. This lease contained many detailed provisions for the farming and cultivating of the area and was a rather lengthy document. When presented to plaintiff the first time it was not agreeable to him, and he suggested certain changes, which were made before he signed. No question of fraud, mistake or misunderstanding enters into the case.

For the purposes of the present action, and the appeal here being considered, we may concern ourselves with but

two provisions of the lease. Paragraph 17 of the lease reads as follows: "The lessee shall seed during the fall of 1928, the six hundred acres, more or less, of said demised premises which are now in summer fallow, and the lessee further agrees to summer fallow the remaining acreage of the demised premises in the spring of 1929, excepting the 50 acres of the demised premises formerly in alfalfa, which the lessee may either plow and seed in the fall of 1928 or summer fallow in the spring of 1929, as he may desire. Thereafter the lessee shall, during his occupancy of the demised premises, seed and fallow such portions of said premises in rotation." Paragraph 19 reads: "In the event that the above described premises hereby leased and demised shall be sold at any time during the term hereby created, then at the expiration of 30 days after the date of mailing by the lessor to the lessee of a notice of such sale, this lease and the term created thereby shall be terminated without further acts or proceedings on the part of the lessor; provided, however, that if the lessee's tenancy of the demised premises shall be so terminated as in this paragraph provided after harvest season but before seeding in the fall of any year of the term hereof, then the lessee shall be entitled to receive, and the lessor shall pay to the lessee the going wage in the vicinity for the summer fallowing which the lessee may then have done in accordance with the terms of this lease; and further provided that if this lease be so terminated as herein set forth, after the seeding shall have been done in any year of the term hereof, then the lessee shall be permitted to remain upon the premises and to mature and harvest the crop which shall have thus been seeded, and shall summer fallow a portion of the premises as in paragraph 17 provided. Upon the completion of such harvesting, but in no event later than September first of any year of the term hereof, the lessee shall immediately vacate the premises."

Under this lease plaintiff entered into possession of the demised premises and remained thereon throughout the entire period of the lease, vacating the premises at the conclusion of the term. Though some suggestion is made that plaintiff did not fully comply with the terms of the lease, we do not consider this point is necessary to the decision, and we proceed upon the assumption that in all

respects plaintiff fully complied with the requirements of the lease, and at the termination thereof surrendered possession to the lessor. The date of surrender was in September, 1931.

When plaintiff left the premises, upon surrender of possession, there were 340 acres of the lands in summer-fallow. Defendant took possession of the entire leased premises, including the acreage in summer-fallow.

It is the claim of the plaintiff that he is entitled to compensation for the work and labor performed in summer-fallowing these 340 acres, and his claimed cause of action in the instant controversy is to recover the sum of $1530 alleged to be the ordinary and reasonable value of the said work and labor.

The contention of plaintiff is that in the county of Merced, where the lands are situate, and in the farming community adjacent thereto, there is a usage and custom in regard to the summer-fallowing of lands under lease, which custom is pleaded by plaintiff as follows: "In the absence of express provisions to the contrary: Where a lessee of grain farming lands, farming such lands under provisions for summer fallowing of portions thereof, shall summer fallow portions of said lands during the last year of the term of his lease, such summer fallow shall constitute personal property, and such lessee shall have an ownership therein to the extent that he has the right to seed the same and grow and harvest a crop thereon subject to the terms of his lease; said right of said lessee to seed such summer fallow being subordinate to the right of the lessor to buy such summer fallow from said lessee at the end of the term of his lease, and to pay the said lessee the reasonable and customary value thereof. Further, that upon failure of the lessor to buy said summer fallow from the lessee, the lessee has the right, at his option, to either seed the said summer fallow, or to sell the same to parties other than the lessor, and such other purchaser shall have the right to seed the same and grow and harvest a crop thereon, subject to the terms of the lease."

It may be well, at this point, to consider the terms "summer fallow" and "summer fallowing". The first term includes the second. In other words, summer-fallow is the result of summer-fallowing. The word is of common

derivation coming primarily from· the word "fallow". This latter word means simply barren or unproductive. When land is left barren and without seed, it is said to be fallow. The practice has arisen in certain sections of the state devoted to grain of altering the acreage. That is, one portion of the lands will be harvested and the remaining portion left fallow for that year. The procedure is to plow and disk the area to remain uncultivated, and then leave it barren throughout the summer, with the plan and in the hope that the soil will again be renewed, and its fertility, impaired to some extent through the previous planting, will be restored. It is this scheme of plowing and disking that is called summer-fallowing, and lands thus uncultivated beyond the plowing and disking are said to be in summer-fallow. It will thus be noted that summer-fallow is not a thing but a condition, and it will be further noted that it is rather an unusual custom that would impart to land the character of personal property simply by reason of an altered condition. In any event, issue was joined and the defendant stood upon the terms of the lease, as far as the trial went and as far as we are interested on the appeal.

After hearing all of the evidence adduced and admitted, the trial court found that the. lease between the parties, which we have hereinbefore noted, was the only lease or contract or agreement entered into by and between the parties in regard to the rental of said lands. That under the· terms of said lease the summer-fallow was and is the property of defendant. The court further found that it was not true that said lease was made and entered into by the parties in contemplation of any custom or in contemplation of any usage alleged to exist and practiced in the community relative to summer-fallowing of grain farming lands and the respective rights of the parties in regard to such summer-fallowing, and in this respect the court found that the lease contained all of the terms and conditions contemplated by the parties, and that the lease was not uncertain and not ambiguous, and fully stated the intentions of the parties, and that the summer-fallowing of the lands during 1931 was done under the terms of the said lease.

For good measure the court further found that there was no usage or custom, as alleged by the plaintiff, applicable to a lease for a term of years, and that any usage or custom in regard to property rights in summer-fallow was applicable only to lands rented from year to year. If these findings, or any of them, find support in the evidence, the judgment must be affirmed, in the absence of other error. ▮ It is a well-settled principle of law that custom or usage may be shown when the parties have not incorporated into an instrument all of the terms of their contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of a contract. (*Buckner* v. *Leon & Co.*, 204 Cal. 225 [267 Pac. 693].) Usage, however, is only admissible as an aid to the interpretation of an ambiguous or uncertain contract; and it is never admissible to vary the terms of a clear and unambiguous contract. (See title, Usages and Customs, vol. 24, New California Digest, p. 302 et seq., for a collection of authorities on this subject.) ▮ And it is generally the province of the trial court to construe a contract in question and first determine whether any uncertainty or ambiguity exists. ▮ As noted, the trial court found that in the lease before it there was no ambiguity and no uncertainty. A mere reading of the lease will demonstrate the correctness of the court's conclusion.

The lease sets forth that it is entered into upon certain terms and conditions. The evidence shows beyond dispute, and, indeed, it is admitted, that plaintiff examined the lease carefully before execution, and demanded certain changes before signing. The lease takes up this subject of summer-fallow. The lessee agreed that he would summer-fallow throughout the period of the lease, as a condition of his possession. To obviate any possible uncertainty on the subject the lease went further and specifically provided what the rights of the parties should be in case the lease was terminated before the expiration of the term. According to these provisions, if the lessor terminated the lease after summer-fallowing, the lessee should either have the benefit of the crop or should receive the going wage for the work done. If, however, the lease was terminated after the land was seeded, the lessee should have the benefit of

the crop, but was required, in that event, to summer-fallow the portion provided by the terms of the lease. Almost every contingency was provided for with regard to the summer-fallow. Under the clear terms of the lease the lessee assumed the obligation of summer-fallowing and nothing was left for interpretation.

■ The next finding of the trial court that the custom and usage claimed did not exist finds ample support in the evidence. All of the witnesses, save one, called by the plaintiff, and even plaintiff himself, limited the custom to cases where the lease was either oral or for just one crop. ■ Appellant urges that the testimony thus given should not be given much weight, for the one reason that such testimony was elicited from plaintiff's own witnesses on cross-examination. In other words, the contention seems to be that a court is bound by the direct testimony and must not consider the cross-examination. The testimony of a witness, both direct and cross, is to be taken as a whole and considered as one narrative. Of course, we are aware of the rule that this does not apply in cases of nonsuit or directed verdict, but the reasoning there applied has no application when the case is submitted on its merits and the court is called upon to determine any conflicts. There is no need to dwell at any length on this point for the obvious reason that whatever view we take, we reach the same result. If the cross-examination of plaintiff's witnesses did not establish the fact as claimed by defendant and found by the court, then it did serve to overcome the force of the testimony given on direct examination, and the issue was then without support. This would leave, then, but one witness whose testimony stood up a little better on cross-examination. As against this was the testimony of the defendant and its agents, to the effect that they had never heard of such a custom, and that no such custom was in mind when the lease was given. The testimony of the plaintiff's witness on this question of custom seemed confined to his own experience and his personal construction as to the practice, and on the whole was vague and indefinite.

From this situation we think the trial court correctly found against the custom claimed. Authorities collected in Ruling Case Law, volume 27, page 155, support the

·rule announced, as follows: "A custom must be certain and uniform in order that it may be recognized as valid and enforceable in a court of law. It must be so uniform in its operation that the parties must be presumed to have known it and acted in reference to it. Lack of definiteness is fatal to the existence of a custom, and a loose usage for an indefinite period, limited to a few persons in one particular locality is not a sufficient showing in a court of law."

 Plaintiff and appellant lays much stress upon a certain letter written by defendant to plaintiff in August, 1930, when the lease had still another year to run. In this letter the defendant used the following language: "Your brother stated that there is not sufficient acreage for you to farm now, that Mr. Hise has bought the ranch where you live, and that you would probably look for a larger tract. If you find one that suits your requirements, I believe we can make arrangements to buy your summer fallow." Appellant reads much into this language and construes it as being almost determinative of his contention. In a way it is so determinative, but against the contention rather than in its favor.

In the first place, the letter indicates that the question of summer-fallow was not left to any indefinite or unknown custom, or to any custom or usage, but was to be the subject of a distinct understanding between the parties. In the second place, the lease itself distinctly provided that in the event the lessor terminated the lease before the expiration of the term, then the lessee should be paid for the summer-fallow. By no stretch of the language could we hold, against the trial court's finding, that this letter tended to establish the existence of any custom.

 Appellant urges the error of the trial court in excluding from evidence a certain letter written by defendant to plaintiff. This letter was dated September, 1926, a date preceding by almost eighteen months the acquisition of the property by defendant, but at a time when defendant held a trust deed against the property, with some likelihood of the necessity of foreclosure. The letter reads: "You should go along and put in the crop this fall on the summer fallowed land in accordance with your lease

with Harry Law and his wife, all of which has our ap-. proval. We are not the owners of the property, and any further arrangements in this respect, we wish you would take up direct with Mr. Law. When I am next in your vicinity, I shall look you up and have a further discussion of matters with you, but in the meantime we wish you to put in the crop in the best farmerlike manner that same can be done as we wish to protect you in the harvesting of the crop during 1927, as well as summer fallowing of the lands next spring." As is usually the case, the mere fact that this testimony was excluded seems to give it a value far beyond what it could have had if admitted. It is apparent that at the time of the writing of this letter there was no privity of relationship between the parties, and the writer particularly requested that any arrangements concerning the land be taken up with the then owners. By no construction could the letter be deemed the acknowledgment or the establishment of any custom. The defendant, perhaps even then realizing that the property would have to be taken over, was interested in maintaining the same as a cultivated and going proposition, rather than as an abandoned property. The defendant wished "to protect" plaintiff in the summer-fallowing to be done in the spring of 1927. Just what form of protection was contemplated does not appear. Under plaintiff's lease with Law, the lessee was already obligated to conduct his operations in a diligent and farmerlike manner, and under the Law lease provided that the lessee should, at the option of lessor, leave all lands not sown to crops summer-fallowed, and the lessor should pay for the summer-fallowing.

The fact that defendant might desire to protect himself on this part of the lease was in nowise binding as far as the question of custom may have gone. There was a collateral issue on the question of how much summer-fallow was on the ranch at the time plaintiff took possession under the lease, the point being that even if a custom were proved as claimed by plaintiff, then he would owe for the amount that was summer-fallowed when he went on. It is barely possible that the letter would have had some relevancy on this issue, and therefore its exclusion was erroneous.

However, as the judgment is most fully supported by the findings on other material issues, no harm could have resulted in the court's ruling.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.