[No. 32105.. Department One. December 11, 1952.]

LUCILLE E. MOORE PREUGSCHAT, *Respondent*, v. T. S. HEDGES, *as Executor, Appellant.*[1]

[1]Reported in 251 P. (2d) 166.

*Brodie, Brodie & Fristoe, Hensel & Hensel,* and *O. R. Hopewell,* for appellant.

*Ned W. Kimball* and *C. M. Clark,* for respondent.

WEAVER, J.—This is an action by a former tenant of wheat land against the lessor to recover the value of summer-fallowing done by the tenant during the term of the lease.

October 12, 1949, defendant leased a farm to plaintiff. The lease was for one crop year. By its terms, it expired September 1, 1950. At the time of its execution, there were 166 acres in summer fallow which were ready to be seeded, and 205 acres in wheat stubble. During the period covered by the lease, the 205 acres of stubble were summer-fallowed by the plaintiff in preparation for the 1951 crop, which, of course, could not be seeded and harvested until after the lease had expired.

The lease was on a one-page printed form. The identifying portions, and those italicized below, were typewritten. In so far as we need notice it, the lease provided:

"That the first party [lessor] for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by the second party [lessee], has by these presents demised and leased to the second party the following described land, to-wit: [land described]

". . . to have and to hold the same to the second party from the *12th* day of *October 1949* to the *1st* day of *September* 1950. And the second party in consideration of the leasing of the premises as before set forth, covenants and agrees with the first party to pay annually as rent for the same, and in the manner following, that is to say:

"*One-fourth of the wheat crop off of said land up to fifteen bushels to the acre and one-third of all of said crop over fifteen (15) bushels.*

*"The stubble land to be summer fallowed and weeded in preparation for the 1951 crop, any government limitations as to acreage to be complied with by the party of the second part.*

*". . . And it is further expressly understood and agreed between the parties hereto as follows: . . .*

"5. The first party reserves the right to plow the stubble ground when the second party may have cut the grain grown thereon, and further that the first party or his legal representative may enter upon said premises for the purpose of viewing or of seeding and making repairs, and also the right to cancel this lease at any time and covering any part of this land which is not then seeded, by paying the second party the going price for all good summerfallowing then on the part so cancelled." (Italics ours.)

Plaintiff did not vacate the property at the expiration of the lease on September 1, 1950. The defendant gave her written notice to do so on October 10, 1950. Sixty days had not elapsed from the termination date of the lease of agricultural land; hence the notice was timely. Rem. Rev. Stat., § 813 (*cf.* RCW 59.04.060). Plaintiff surrendered possession. Not having been paid for the 205 acres of summer-fallowing done by her, she brought this action. From a judgment in her favor, defendant has appealed.

 Throughout the entire record of this case, there appears a continuing reference to the *ownership* of summer fallow. Such a concept is misleading. In *Farmer and Merchants Bank v. Small*, 131 Wash. 197, 200, 229 Pac. 531, we said:

"Summer-fallowing is the plowing of the ground and the harrowing of it during one season preparatory to sowing it for crop during the next season."

Its purpose is to destroy weeds, conserve moisture, and renew the fertility of the soil. By leaving the land fallow and alternating the crop each year, the maximum harvest may be expected. *Letz v. Lampen*, 110 Mont. 477, 104 P. (2d) 4. In *May v. American Trust Co.*, 135 Cal. App. 385, 390, 27 P. (2d) 101, the court said that "summer-fallow is not a thing but a condition."

Being a *condition*, it is not, of itself, subject to ownership. However, as a *condition* created by work and labor, the one

creating it may be entitled to compensation for his work and labor.

Both the plaintiff and the defendant, at various stages of the proceeding, claimed that the lease was ambiguous and hence must be explained by oral evidence. As a result, the testimony covered a wide range, even to the point of containing evidence of a local custom that "cancellation" and "expiration" of wheat land leases are synonomous.

■ The trial judge, in his memorandum opinion, expressed doubt as to the ambiguity of the lease. He said:

"The court is therefore bound in this case to construe the agreement as written without the assistance of any parol evidence of the negotiations and background leading up to the execution of this lease. In other words the parties signed a written instrument and are bound by what they signed."

With this, we agree. Parol or extrinsic evidence is inadmissible to contradict a written contract which is valid, complete, unambiguous, and not tainted by fraud, accident, or mistake. *Jackson v. Domschot,* 40 Wn. (2d) 30, 239 P. (2d) 1058. The trial court based its decision upon an interpretation of the terms of the lease itself. We, therefore, direct our attention to appellant's (defendant's) third assignment that the trial court erred in entering finding of fact No. 4:

"That by the terms of paragraph 5 the lessor acknowledged the ownership of the summerfallow by the lessee to the extent that he was entitled to be paid the going price for 205 acres of summerfallow."

■ A lease is both a present conveyance and an executory contract. If the subject matter is real property, it transfers to the lessee a right of possession to the lands and tenements. It is executory in that the lessee is required during the term of the lease, either expressly or by implication, to fulfill or perform certain covenants in consideration of the conveyance to him.

The lease of October 12, 1949, conveyed to plaintiff the right of possession of the land until September 1, 1950. The transfer was made by the defendant "in consideration of the covenants and agreements hereinafter mentioned, *to be kept*

*and performed by the second party."* (Italics ours.) One of the covenants to be kept and performed by plaintiff as a condition of her possession until September 1, 1950, was:

"The stubble land to be summer fallowed and weeded in preparation for the 1951 crop, any government limitations as to acreage to be complied with by the party of the second part."

■ The lease specifically identified the crop year for which the summer-fallowing was to be done which, by the terms of the lease, would not be used until after the lease had expired. Whether we view this typewritten provision as a part of the covenant for the payment of rent (*Medgard v. Shimogaki,* 135 Wash. 527, 238 Pac. 574) or as an independent covenant, we reach the same conclusion:

"Under the clear terms of the lease the lessee assumed the obligation of summer-fallowing and nothing was left for interpretation." *May v. American Trust Co., supra.* (p. 392)

The covenant to summer-fallow in preparation for the 1951 crop was an act to be performed by the plaintiff as a condition of her possession. The provisions of paragraph No. 5 do not change this conclusion.

■ The covenant to summer-fallow is typewritten. Paragraph No. 5 is printed. Although it is a rule of general application that a typewritten clause of a contract will prevail over a printed clause if the two are irreconcilable (*Creditors Ass'n v. Fry,* 179 Wash. 339, 37 P. (2d) 688; *Franklin v. Northern Life Ins. Co.,* 4 Wn. (2d) 541, 104 P. (2d) 310), we have no difficulty construing them together under the facts of this case and the terms of the lease.

■■ Paragraph No. 5 does not "acknowledge the *ownership* of summer-fallow by the lessee." It simply provides that upon the happening of a certain event, the lessee may become entitled to payment for his work and labor in summer-fallowing the land. Before the lessee becomes entitled to such payment, the lessor must exercise his right "to cancel this lease at any time and covering any part of this land which is not then seeded." The lease was not canceled in its entirety nor was it canceled as to "any part of

this land which is not then seeded." The lease expired by its own terms. There is a well-defined difference in law between "cancellation" and "expiration." Evidence that by local custom they are synonymous, is not admissible to vary the terms of a clear and unambiguous provision of the contract. *Williams v. Ninemire,* 23 Wash. 393, 63 Pac. 534; *May v. American Trust Co., supra.* Having provided for payment in the event of cancellation, it is logical to conclude that, upon the expiration of the lease, the summer-fallowing is governed entirely by the covenant of the lessee.

That defendant *might have* canceled the lease prior to September 1, 1950, and thus become liable for the going price of the summer fallow, does not change our conclusion. It is sufficient to point out that it was not canceled.

Plaintiff places considerable emphasis upon the case of *Potts v. MacDonald,* 152 Wash. 114, 277 Pac. 374. While the facts are quite similar to those of the instant case, they are distinguishable. First: the written lease was for an indefinite term. Under our agricultural lease statute (Rem. Rev. Stat., § 813; *cf.* RCW 59.04.060) it became a lease from year to year, expiring each year on October 1st. The tenant farmed the land for seven years before notice of termination was given. Second: the lessee had paid the lessor the value of the work and labor represented by the summer-fallowing upon the land at the commencement of the term.

Under the terms of this lease, plaintiff cannot recover. In consideration of her possession, she covenanted to deliver a portion of the crop and to summer-fallow in preparation for the following year. Having enjoyed the full period of her possession under the lease, she has received everything to which she is entitled.

The judgment is reversed, with directions to dismiss the action.

SCHWELLENBACH, C. J., MALLERY, GRADY, and DONWORTH, JJ., concur.