6 P.3d 621 (2000)
101 Wash.App. 878
Wallace E. LANE and Patricia R. Lane, husband and wife, Respondents,
v.
Thomas E. WAHL and Sharon L. Wahl, husband and wife, Appellants.
No. 18445-5-III.
Court of Appeals of Washington, Division 3, Panel Seven.
August 10, 2000.
*622 David J. Carlson, Paul J. Burns, Spokane, for Appellants.
Patrick R. Acres, Robert E. Schiffner, Moses Lake, for Respondents.
SCHULTHEIS, J.
When Wallace and Patricia Lane quitclaimed one and one-half acres of land to their neighbors, they received in return a 10-year renewable lease to continue farming Christmas trees on the property. The land's subsequent purchasers, Thomas and Sharon Wahl, attempted to terminate the lease and the Lanes sued. After a bench trial, the court found that the lease was valid, but that the Lanes owed the Wahls damages for injury to the Wahls' property and for certain fees and assessments under the lease. On appeal, the Wahls contend the lease is illusory and unenforceable due to lack of consideration. They also challenge the Lanes' entitlement to attorney fees and costs. We affirm.

FACTS
In the early 1970s, the Lanes bought four acres of rural land east of Moses Lake. They built two houses on the land and farmed Christmas trees on the back portion. In late 1986, the Lanes sold one of the houses and the surrounding one-half acre to Oscar and Marie Grogan. They retained the one and one-half acres behind the Grogan parcel so they could continue to farm trees.
The Lane property was part of a development subdivision that imposed covenants on the property owners. In October 1987, a lawyer representing the subdivision development association informed the Lanes that the sale of a house on only one-half acre of land violated the covenant requiring all homesites to contain at least two acres. Around this time, the Grogans were attempting to sell their house and property to Daniel and Katherine McCarthy. The McCarthys refused to close the transaction until the conflict over the restrictive covenant was resolved. To *623 avoid a threatened lawsuit, the Lanes agreed to quitclaim the remaining one and one-half acres of the lot to the Grogans. In exchange, the Grogans agreed to give the Lanes a 10-year farm leaserenewable at the Lanes' option for an additional 10 yearsto continue operating the Christmas tree business. The Lanes quitclaimed their interest in the one and one-half acres to the Grogans on August 5, 1988. That same day, the Grogans conveyed their interest in the land to the McCarthys, and the McCarthys executed a farm lease agreement with the Lanes. The lease was recorded August 10, 1988.
In relevant part, the farm lease agreement provides that "in consideration of the mutual covenants herein and other considerations," the lease runs from August 1, 1988 to July 31, 1998. The Lanes have an unrestricted right to renew for another 10 years and "shall have the unrestricted right to terminate this lease at any time by giving notice in writing to the LESSOR by certified mail." Additionally, the Lanes are required to pay all assessments, water and electrical power charges and are responsible for all damage to person or property resulting from their use of the land. The lease also contains an attorney fees provision that entitles the prevailing party in an action to enforce the lease to fees and costs, including on appeal.
The McCarthys later sold their property to Shelley Weber, who sold it to the Wahls in January 1993. Mr. Wahl read the farm lease before he bought the land, but he intended to break the lease and farm the back acres himself.[1] It was his opinion that the Lanes' unrestricted right to terminate the farm lease rendered the agreement unenforceable. Not surprisingly, the relationship between the Lanes and the Wahls deteriorated quickly. Each party claims the other engaged in harassing behavior. For instance, in November 1993 the Wahls put up a sign on their property, facing the Lanes' Christmas tree lot, declaring that the Lanes gave them nothing to grow trees on their land.
In autumn 1993, the Lanes decided to sell their property to Peter Harris. Mr. Harris bought the Lane parcel in June 1994 and agreed to pay for an assignment of the lease after the dispute with the Wahls was resolved. The Wahls filed a notice of farm lease termination in July 1994. In response, the Lanes filed a complaint in October 1994 seeking damages for trespass, slander of title, abuse of process and a permanent restraining order. The Wahls answered with a general denial and counterclaimed that the lease was illusory and unsupported by consideration.
After a bench trial in November 1997, the court noted, "I don't think that I have very many times in my judicial career come to the end of a presentation of evidence and argument and felt so assured about the proper outcome of the matter." The court found that in August 1988 the Lanes gave up one and one-half acres of land and the McCarthys gave up potentially 20 years' use of the land, all to avoid an outstanding dispute over restrictive covenants. Finding that the agreement was supported with ample consideration and that there was "nothing at all illusory about it," the court ruled that the farm lease was valid and binding on all successors. Because the lease holds the Lanes responsible for all damages arising from their use of the property, the court found that they were liable for any injury to the Wahls' property caused by herbicides or pesticides. On that basis, the court awarded the Wahls $1,016 for damage to their plants and ordered the Lanes to pay any back-due assessments and charges that were their responsibility under the lease. Additionally finding that the Lanes prevailed in this action to enforce the lease, the court awarded them attorney fees, but only those incurred in this defense of their lease rights. All other claims and requests for injunctive relief were denied.
For reasons undisclosed in the record, the findings and conclusions were not presented to the court until over a year later. The Lanes were awarded $4,750 in attorney fees and costs. This appeal followed.

ILLUSORY LEASE AGREEMENT
The Wahls contend the farm lease agreement is invalid because its performance is *624 discretionary on the part of the Lanes, rendering it illusory, unenforceable, and inadequate consideration to support the agreement.
An illusory promise is one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor. King County v. Taxpayers of King County, 133 Wash.2d 584, 600, 949 P.2d 1260 (1997); Spooner v. Reserve Life Ins. Co., 47 Wash.2d 454, 458, 287 P.2d 735 (1955). Generally an agreement that reserves the right for one party to cancel at his or her pleasure cannot create a contract. Mithen v. Board of Trustees of Central Wash. State College, 23 Wash.App. 925, 932, 599 P.2d 8 (1979) (citing 1 S. Williston, Contracts § 105, at 418 (3d ed.1957)). Further, the illusory promise is insufficient consideration to support enforcement of a return promise. Sandeman v. Sayres, 50 Wash.2d 539, 541, 314 P.2d 428 (1957), cited in Interchange Assocs. v. Interchange, Inc., 16 Wash.App. 359, 361, 557 P.2d 357 (1976).
The Wahls contend the lease provision that allows the Lanes to terminate the lease at any time with written notice creates an illusory promise. What they fail to acknowledge is that a lease is not a typical contract. Leases are conveyances whose covenants are interpreted under contract law. See Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990); Preugschat v. Hedges, 41 Wash.2d 660, 663, 251 P.2d 166 (1952). Key to our resolution of this issue is the decision in Peoples Park & Amusement Ass'n v. Anrooney, 200 Wash. 51, 93 P.2d 362 (1939), a case involving a 10-year lease. In Peoples Park, the lessor argued that the lease was invalid because only the lessee could terminate the lease at any time, and that consequently there was a failure of consideration for the lease. Id. at 55, 93 P.2d 362. The court held that the usual contract rules do not apply to leases for a fixed period:
The authorities uniformly hold that a lease for a definite term which contains a provision for its termination before the expiration of the term fixed at the option of either of the parties is not invalid, although it gives the lessor or the lessee alone the right to terminate the lease.
Id. at 56, 93 P.2d 362. Further, the court noted, the lessee promised to do something and to pay certain money in exchange for the lessor's promise to lease the premises. This promise for a promise was sufficient to obligate both parties under the lease. Id. at 57, 93 P.2d 362.
Here, as in Peoples Park, the Lanes and McCarthys entered into a lease for a fixed period of at most 20 years (10 years with the option of 10 more). The fact that the Lanes may terminate the lease before the expiration of the term does not render the lease invalid. Although the original agreement was between the Lanes and the Grogans, the McCarthys immediately took the land by deed, reduced the lease agreement to writing and properly recorded it. That the threat of a lawsuit for restrictive covenant violations may have been the driving force behind the conveyance of the land to the Grogans/McCarthys is not directly relevant to the promises exchanged in the creation of the farm lease agreement. The Lanes' promise to convey title to the one and one-half acres and to pay assessments, utilities and water charges in exchange for the Grogans'/McCarthys' promise to lease the land for a definite term was ample consideration for the agreement.

ATTORNEY FEES
The Wahls next contend the trial court erred in awarding attorney fees and costs to the Lanes. The Wahls assert that because they won damages for their counterclaims and the Lanes prevailed only on their claim that the lease was valid, the Wahls are the substantially prevailing party and are entitled to fees and costs under the lease. Alternatively, they argue, neither party prevailed and therefore neither is entitled to an award.
Attorney fees must be based on a contract, statute or recognized ground in equity. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). RCW 4.84.330 provides that a contract containing an attorney fees provision entitles the prevailing party in an enforcement action to recover reasonable *625 fees and costs. If neither party wholly prevails, "then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." Riss v. Angel, 131 Wash.2d 612, 633, 934 P.2d 669 (1997). Here, the Lanes prevailed in the action to enforce the lease, which contained an attorney fees provision. The value of the relief afforded by that judgment is the value of the lease to the Lanes. As the record shows, the Lanes have agreed to assign the lease to Mr. Harris for $15,000. The Wahls, on the other hand, were merely awarded $1,016 for damage to their property and additional sums (not reported in the record) for certain assessments and charges under the lease. Because the central issue of this lawsuit was the validity of the lease, and because the Lanes prevailed on this issue and consequently recovered the greater relief, the trial court did not err in awarding them reasonable attorney fees and costs incurred in this action.
Both parties request attorney fees on appeal. The Lanes, as the prevailing party on appeal, are entitled under the same provision in the farm lease to attorney fees, assuming they comply with RAP 18.1. Marassi v. Lau, 71 Wash.App. 912, 920, 859 P.2d 605 (1993).
Affirmed. The Lanes are awarded attorney fees pursuant to RAP 18.1.
KURTZ, C.J., and KATO, J., concur.
NOTES
[1] The statutory warranty deeds from the McCarthys to Ms. Weber and from Ms. Weber to the Wahls contained provisions stating that the estate was subject to the recorded Lane farm lease.