[No. 48776-6. En Banc. April 14, 1983.]

JOHN A. MCGARY, ET AL, *Petitioners,* v. WESTLAKE INVESTORS, *Respondent.*

*Allen Lane Carr*, for petitioners.

*Siqueland & Holcomb*, by *Herman S. Siqueland*, for respondent.

DORE, J.—This appeal involves the declaratory judgment action of Allen Lane Carr, Inc., P.S., and McGary, Woodburne and Cole, a partnership, against Westlake Investors, a limited partnership, to determine their rights under commercial leases they entered into with Westlake. The trial court entered judgment in favor of Westlake. Carr alone appeals, alleging errors in interpreting the lease renewal clause; the assessment of fees for lessee's parking spaces at

the building; and attorney fees. The Court of Appeals affirmed the trial court, holding that Westlake was not barred from increasing rent for a 3–year renewal term; that Carr was not entitled to free parking; and that the trial court correctly awarded attorney fees. We affirm in part and reverse in part.

I

Beginning October 1, 1973, Westlake leased space in an office building to Carr and McGary for law offices. The Carr and McGary law firms shared space on one of the floors in the building and jointly negotiated their respective individual leases with Westlake. Carr's lease with Westlake contains the following clause:

> If this lease be for a longer term than thirty–six months, the rental hereunder shall, at the end of thirty–six months . . . be subject to rental adjustment by Lessor, as follows: If, whether because of increased operating costs of the premises or otherwise, Lessor should determine an increase of rental rate to be necessary, Lessor shall so notify Lessee by notice in writing addressed to Lessee at the premises and including a statement of the adjusted rental to apply, such notice to be given at least 90 days in advance of the expiration of the 36–month period as aforesaid, and to be effective on the first day of the rental month immediately following such 36–month period.
>
> (1) If Lessee objects to such increased rental rate, . . . then the revised rental rate shall be determined by a board of arbitrators . . .

Clerk's Papers, at 58. At the place underlined, the word "sixty" was whited out and the figure "90" inserted. This change was not initialed by the parties on the lease as consummated.

The lease also provides that if the lessee objected to the increased rental, the rental would be settled by arbitration.

A further clause of the lease provides that:

> The Lessor guarantees the Lessee the use of 2 executive parking stalls in the building parking lot.

Clerk's Papers, at 59. The figure "2" was typed into a

blank.

The lease further provides in revised typed lease addendum 4 as follows:

> 7. The Lessee shall have the option to renew the lease for six (6) consecutive three year periods, provided lessee gives lessor written notice of their intention to exercise each such option not less than sixty (60) days prior to the expiration date of the lease or any extended period thereof; provided, however, that the monthly rental in the case of each such extension of the lease shall be at the rate to be negotiated between lessor and lessee, shall in no event be less than the monthly rental for the last month preceding such renewal period, and if the lessor and lessee are unable to agree as to the fair market rental value of the premises at the time of commencement of any such extension period, then the revised rental rate shall be determined by a board of arbitrators in accordance with the procedure provided above on page 1 of this lease.

Clerk's Papers, at 63–64.

In their testimony at trial, Carr and McGary gave the following account of the background of the renewal provision. Sometime prior to the execution of the original leases between the Carr and McGary firms and Westlake, the parties entered into different lease documents, signed by Carr, McGary and the partners of Westlake. The leases were negotiated by a real estate broker directly with the partners of Westlake who signed the leases as the lessor. The manager of the building was not available at the time of the consummation of the original Carr lease. Upon his return, he took exception to the terms of the leases and a dispute ensued, culminating in Westlake's disavowal of the lease agreements, pursuant to a letter written by counsel for Westlake.

Protracted negotiations were then commenced between the parties, and ultimately the lease documents with which we are now concerned were signed. The fundamental change between the initial lease and the present one was that the former was for an initial period of 5 years with additional options of 5 years. At the time of the negotiation

of the new leases, Carr requested and was granted the right to change the terms of his lease from 5 years to 3 years. According to their testimony, Carr and McGary requested that the notice–of–rental–increase provision in both leases be changed to at least 90 days in advance rather than the 60 days provided for in the original lease. At the time the lease term began, Westlake did not charge any of its tenants for parking. In July 1974, Westlake began charging most of its tenants for parking but still did not charge Carr rental for his two parking stalls.

On July 30, 1976, approximately 60 days prior to the end of the lease, Carr gave notice that he wanted to exercise his option to renew. He was then informed there would be a rental increase. Discussions regarding the amount of the increase reached an impasse, at which point arbitration was pursued. An arbitration award was made, fixing the fair market rental value in the same amount as Westlake had previously requested. Carr paid the increased amount under protest, pending review of his legal contention that Westlake was not entitled to any rental increase because it had failed to give 90 days' notice of the proposed rental increase and, therefore, lessor waived its right to raise rentals for the first 3–year option agreement.

II

We initially address Westlake's contention that the issues presented on appeal are rendered moot by the lessor's recent unlawful detainer judgment against the lessee, which forfeited the Carr lease and forced him out of the leased premises. This analysis ignores the monetary stake Carr still has in this action. He recently was billed for more than $1,800 in parking rent and owes $4,600 in attorney fees. Obviously this case is not moot.

III

We next consider the issue of whether Westlake is barred from increasing rent for the 3–year term beginning October 1, 1976, because it failed to give lessee notice of a proposed rental increase at least 90 days prior to the end of the pre-

vious term. The 90–day–notice provision applies only if the fixed rental term is greater than 3 years.

We are not persuaded by Carr's contention that because the lease was really for longer than 3 years, the 90–day–notice provision applies. The trial court concluded in finding of fact 2.7 that:

> The intent of the parties to the leases, as expressed in the plain and unambiguous provisions thereof, was that each lease was for a term of thirty–six months only, not longer, with multiple options for renewal under new leases, and not for extensions of the existing leases.

Clerk's Papers, at 18. A finding of fact supported by substantial evidence will not be disturbed by an appellate court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *McGovern v. Department of Social & Health Servs.*, 94 Wn.2d 448, 617 P.2d 434 (1980).

Carr maintains the lease language is ambiguous and the lease should be interpreted as being of longer than a 3–year duration. Generally, the question of whether a written instrument is ambiguous is a question of law for the court. *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966). An ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole. *Green River Vly. Found., Inc. v. Foster*, 78 Wn.2d 245, 249, 473 P.2d 844 (1970). The term "ambiguous" has been defined as "'Capable of being understood in either of two or more possible senses". *Ladum*, at 116, quoting *Webster's New International Dictionary* (2d ed.).

Reading the lease as a whole, we cannot ignore the provisions of lease addendum 4, which the parties specifically negotiated and drafted. The preamble to lease addendum 4 of the Carr lease specifies that "[t]his addendum is for the purpose of adding additional terms or clarifying terms of the lease . . ." That addendum provides the terms upon which the lease may be renewed, and specifically provides that the rental upon renewal is to be a negotiated item, ultimately subject to arbitration as provided for on page 1 of the lease. No other portion of the provision on

page 1 is referenced. Reading the provisions together, the specific language of the addendum providing for a negotiated rate or arbitration must prevail over the general terms of the notice–of–rental–increase provision on page 1. *Local 104, Int'l Bhd. of Boilermakers v. International Bhd. of Boilermakers,* 28 Wn.2d 536, 183 P.2d 504 (1947).

The intent of the parties to the contract is to be gleaned from the document itself, and only if it is ambiguous is parol evidence regarding the parties' actual intent admissible. *Poggi v. Tool Research & Eng'g Corp.,* 75 Wn.2d 356, 451 P.2d 296 (1969). As there is no ambiguity in the document itself, Carr's reliance on evidence regarding his own intent in changing the notice provision is misplaced.

We affirm finding of fact 2.7 and hold that the trial court correctly concluded that the lease between the parties was one for a 3–year term with six 3–year options, and that the provision for a 90–day notice of rent increase in the case of a lease longer than 3 years does not apply. Westlake was, therefore, not barred from increasing the rent for the new lease period.

IV

We next consider the question of whether the Carr lease provides two free parking spaces to the lessee. The lease provision "guarantees the Lessee the use of 2 executive parking stalls in the building parking lot". Clerk's Papers, at 59. The trial court found that, because the Carr lease was negotiated contemporaneously and jointly with the McGary lease, it should be considered when ascertaining the expressed intent of the parties as to the meaning of the Carr lease. The McGary lease provides for four parking stalls, stating in an addendum that

> [o]f the four executive parking stalls referred to in paragraph 19, page 2 of the lease, two of such stalls shall be held and maintained at the sole cost of the lessor for the use and benefit of the lessee.

Clerk's Papers, at 56.

The trial court concluded the term "guarantee" as used in the Carr lease is unambiguous in that it provides the lessee with parking. We are persuaded by Carr's contention that the term "guarantee" is ambiguous, as it does not specify whether payment is required or whether the parking spaces are free.

Any ambiguity must be construed against Westlake, the preparer of this provision of the lease document. *Wilkins v. Grays Harbor Comm'ty Hosp.*, 71 Wn.2d 178, 427 P.2d 716 (1967).

As the parking provision language is ambiguous, it is appropriate to look at the parol evidence regarding the parties' actual intent. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978); *Green River Vly. Found., Inc. v. Foster*, 78 Wn.2d 245, 473 P.2d 844 (1970).

Both Carr and McGary testified they understood Carr's two parking spaces were to be provided free of charge, and this testimony was not rebutted. Westlake's building manager testified that he had made no demand on Carr for rent payment for the parking spaces for approximately 4½ years, although demand to the other tenants in the building, who were not to receive free parking, was made from the initiation of parking charges shortly after these leases were executed. He also testified that when the parking concession was leased to an independent organization, he gave the names of all the tenants to be billed for parking to the organization, but did not at any time give Carr's name to the organization for billing purposes and Carr was not billed. The parties acted upon the provisions as providing free parking for 4½ years before any claim was made that Carr should be paying for his parking spaces, and this claim was not made until after this subject dispute between the parties had arisen.

After a review of the evidence presented in the record, we conclude the trial court erred in holding that the parking privilege granted to Carr was not granted free of charge. We also conclude that Carr's lease must be read indepen-

dently of McGary's, as it was an independent lease involving different parties. McGary was provided four spaces under the terms of his lease, two of which he paid for and *two* he received *free* from lessor.

V

Finally, we address the issue of whether the lessor is entitled to reasonable attorney fees. The Carr lease provides:

> In the event of litigation between the parties hereto declaratory or otherwise, for the enforcement of any of the covenants, terms and conditions of this lease, the losing party shall pay costs thereof and reasonable attorneys' fees which shall be determined and taxed by the court as part of such action.

Clerk's Papers, at 7.

Under this provision, if Westlake prevailed, it would be entitled to attorney fees. Under our decision here, however, there is no prevailing party. Consequently, we find the award of attorney fees to either party to be inappropriate.

CONCLUSION

We affirm the Court of Appeals holding that Westlake was not barred from increasing the rent for the 3–year period beginning October 1, 1976. We reverse and set aside those provisions in the Westlake judgment that Carr was required to pay for the parking spaces provided by Westlake, and the award of attorney fees to Westlake in the trial and appellate courts. We award no attorney fees to either party on this appeal to the Supreme Court.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.