# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 30, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 30, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SPOKANE AIRPORT BOARD, | ) | No. 99180-4 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| EXPERIMENTAL AIRCRAFT | ) | |
| ASSOCIATION, CHAPTER 79, | ) | |
| | ) | Filed: <u>September 30, 2021</u> |
| Respondent. | ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—Under RCW 59.12.030(1), a tenant who leases premises for a specified term or period becomes a holdover tenant liable for unlawful detainer when they remain in possession of the premises "after the expiration of the term for which it is let to him or her." The question before the court is whether a tenant in a fixed-term commercial lease can become a holdover tenant when the tenancy ends pursuant to an early termination provision. The tenant argues that this unlawful detainer provision applies only when the tenant remains after the end of the original term specified in the lease. We disagree. We hold that in this case, exercising the no-fault early termination provision in the lease revised the term of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the lease, and the term expired on the revised termination date. Therefore, the tenant became a holdover tenant under RCW 59.12.030(1) when they continued in possession of the leased premises after that date. Accordingly, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

A.     Factual Background

In 2011, Experimental Aircraft Association, Chapter 79 (EAA), entered into a lease agreement with the Spokane Airport Board (Airport) to rent an aircraft hangar at Felts Field airport in Spokane. EAA leased Building 7 "to offer facilities and training for aircraft construction, restoration, and flight training." 2 Clerk's Papers (CP) at 417.

Article 1 of the original lease agreement specified a term of 5 years, from March 1, 2011, to February 28, 2016, "unless sooner terminated or canceled as herein provided." *Id.* at 34. The next sentence of that clause also stated, "Either party may cancel this Agreement upon one hundred eighty (180) days advance written notice." *Id.*

Other provisions of the lease addressed the circumstances under which the parties could terminate the lease for cause; some delineated specific notice requirements and cure periods, while others were silent as to notice. For example, Article 5 entitled the landlord to reenter and take possession of the premises when a tenant failed to pay rent, and it specified a 10-day notice and cure period. Article 23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

addressed the landlord's rights of cancellation if the tenant breached any of its covenants in the lease, and it specified a 30-day notice and cure period. It also permitted the landlord to terminate the lease under various circumstances involving the tenant's bankruptcy, which did not require any form of notice from the landlord. These termination rights were "[i]n addition to any conditions as specified herein and all other remedies available to the Airport." *Id.* at 46. Article 24 addressed the tenant's rights of cancellation. Similar to the provisions addressing the landlord's rights, some of the tenant provisions required written notice and/or the passage of a specified time period (60 days for the Airport's breach of any lease covenants, 90 days for actions by the federal government that restrict use of the premises), while others would apparently be automatic (e.g., abandonment or force majeure).

The lease also included an option to renew for an additional 5-year term. In February 2016, the parties executed an amendment to the lease agreement, amending the term to "five (5) years commencing March 1, 2016 and ending February 28, 2021 unless sooner terminated or canceled as herein provided." *Id.* at 56. The term provision in the lease amendment reiterated the language, "Either party may cancel this Agreement upon one hundred eighty (180) days advance written notice." *Id.* The amendment adjusted the amount of rent due but otherwise stated that "[a]ll other terms and conditions [of the original lease agreement] . . . shall remain in full force and effect." *Id.* at 57.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

On November 28, 2017, the Airport provided written notice to EAA that it was canceling the lease with 180 days' notice, effective May 29, 2018. The Airport informed EAA that it was terminating the lease for Building 7 because the hangar was going to be demolished to allow construction of a new building. The Airport indicated that it hoped to work with EAA to lease a portion of a different hangar and that, since the Airport planned to move forward with the construction project as soon as possible, EAA may need to move into the other building before the lease ended.[1] The written notice stated that the Airport was canceling the lease "[p]ursuant to Article 1 – Term, either party may cancel this agreement upon providing 180 days written notice." *Id.* at 60.

Over the next nine months, EAA and the Airport tried to determine whether another hangar, Building 17, would provide a suitable space for EAA to lease. Meanwhile, since the construction project did not move forward as quickly as the Airport had anticipated, the Airport sent EAA several notices extending its occupancy in Building 7, eventually extending the termination of the lease to August 17, 2018.[2]

---

[1] The lease provided that the Airport may require the tenant to relocate if it determined relocation was "necessary for the orderly expansion and development of the [Felts Field] facilities." 2 CP at 52.

[2] The parties do not advance any arguments regarding the validity or effect of the extensions. We view it conceded that if the Airport was permitted to terminate the lease early at will, it was also permitted to extend the termination date to August 17, 2018, with notice to EAA.

*Spokane Airport Bd. v. Experimental Aircraft Ass'n Ch. 79*
No. 99180-4

As the final deadline for EAA's occupancy of Building 7 approached, the Airport began preparing to coordinate EAA's move to Building 17. The Airport made arrangements to move EAA to Building 17 the week of August 13, 2018, and obtained EAA's consent to an indemnification agreement for the move—but it had to cancel the reservation with the moving company when EAA failed to find a member who could be present to oversee the move. The parties also negotiated over a new lease for Building 17 to begin September 1, 2018, but EAA never signed the new lease agreement. August 17, 2018, passed, and EAA remained in Building 7.

B.      Procedural History

On August 20, 2018, the Airport filed a complaint for unlawful detainer under RCW 59.12.030(1). The superior court issued an order authorizing a writ of restitution and issued the writ the same day. EAA filed a motion to stay the writ, but the court fixed the bond at an amount much higher than what EAA proposed, and EAA did not post the bond. *See* RCW 59.12.100. The writ of restitution was executed on August 27, 2018.[3]

The parties filed cross motions for summary judgment. EAA argued that the unlawful detainer action should be dismissed because the lease term would not expire until February 28, 2021, the end date specified in the lease amendment. EAA

---

[3] The Airport had the locks to Building 7 changed. The Airport permitted EAA access to the building to remove its property on August 28, 2018, and the Airport later stored and disposed of the items that EAA left behind.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

maintained that Articles 23 and 24 of the lease identified the *sole* grounds for cancellation of the lease and that the Airport could not cancel the lease agreement absent any default or breach. In contrast, the Airport argued that it properly terminated the lease agreement pursuant to Article 1 and that EAA was liable for unlawful detainer under RCW 59.12.030(1). The Airport further argued that it should recover double damages under RCW 59.12.170, as well as reasonable attorney fees and costs.

The court granted the Airport's motion for summary judgment as to unlawful detainer, reserved the matters of the Airport's damages and attorney fees, and denied EAA's motion. It concluded that the cancellation provision in Article 1 of the lease permitted the Airport to terminate the lease at will with proper notice. Therefore, it reasoned, the lease term expired after the 180-day written notice to cancel and EAA was liable for unlawful detainer when it held over after that time.

The Court of Appeals reversed in an unpublished decision. *Spokane Airport Bd. v. Experimental Aircraft Ass'n Chapter 79*, No. 36612-0-III, slip op. (Wash. Ct. App. Aug. 4, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/366120 _unp.pdf. It concluded that under *FPA Crescent Associates v. Jamie's LLC*, 190 Wn. App. 666, 360 P.3d 934 (2015), RCW 59.12.030(1) applies "only to lessees who hold over following the *expiration* of a fixed term, not to lessees who hold over after a term that has not expired but has been lawfully shortened by the exercise of a right

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of cancellation or termination." *Id.* at 9. We granted the Airport's petition for review.

196 Wn.2d 1037 (2021). The Washington Airport Management Association filed a

brief of amicus curiae.

## II. ANALYSIS

We review an order granting summary judgment de novo. *Grundy v. Thurston*

*County*, 155 Wn.2d 1, 6, 117 P.2d 1089 (2005). Summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

We also review the meaning of a statute de novo. *Dep't of Ecology v. Campbell &*

*Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In interpreting statutes, our

"objective is to ascertain and carry out the Legislature's intent." *Id.* We discern the

plain meaning by considering the language of the statute and related statutes. *Id.* at

11. If the statute is ambiguous, we then refer to legislative history and other aids to

construction. *Id.* at 12. Washington's unlawful detainer statute is in derogation to the

common law and must be strictly construed in favor of the tenant. *Hous. Auth. v.*

*Terry*, 114 Wn.2d 558, 563, 789 P.2d 745 (1990).[4]

---

[4] On May 10, 2021, Engrossed Substitute House Bill 1236 went into effect, amending chapter 59.18 RCW (the Residential Landlord-Tenant Act of 1973 (RLTA)) and RCW 59.18.030 (the unlawful detainer statute). LAWS OF 2021, ch. 212. Relevant here, it added language stating that a tenant is liable for unlawful detainer under RCW 59.12.030 "[e]xcept as limited under section 2 of this act relating to tenancies under chapter 59.18 RCW." *Id.* at § 6. This commercial lease is not subject to the RLTA. RCW 59.18.030(34) (under the RLTA, "A 'tenant' is any person

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

A.     Termination of the Lease

As a threshold matter, we must determine whether the Airport was permitted to terminate the lease early without cause. We hold that Article 1 of the lease agreement contained a no-fault termination provision that permitted the Airport to terminate the lease with 180 days' written notice absent any breach by EAA.

Leases are conveyances whose covenants are interpreted under contract law, where we aim to ascertain the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). Ambiguities must be construed against the drafter, but "[a]n ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole." *McGary v. Westlake Inv'rs*, 99 Wn.2d 280, 287, 285, 661 P.2d 971 (1983). A lease provision that allows one party to terminate the lease prior to the expiration of the term as originally fixed is valid and enforceable. *Lane v. Wahl*, 101 Wn. App. 878, 883, 6 P.3d 621 (2000) (quoting and citing *Peoples Park & Amusement Ass'n v. Anrooney*, 200 Wash. 51, 56-57, 93 P.2d 362 (1939)).

---

who is entitled to occupy *a dwelling unit primarily for living or dwelling purposes* under a rental agreement.") (emphasis added). Moreover, we generally presume a statute operates prospectively unless the legislature indicates that it operates retroactively. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (citing cases). Therefore, we presume that the recent amendments do not apply to this commercial lease or to the events that occurred in this case several years earlier, and we interpret the law that was in effect at the time, former RCW 59.12.030 (LAWS OF 1998, ch. 276, § 6). *Densley*, 162 Wn.2d at 223.

The lease agreement and amendment between the Airport and EAA provided that the term would end on February 28, 2021, "unless sooner terminated or canceled as herein provided. Either party may cancel this Agreement upon one hundred eighty (180) days advance written notice." 2 CP at 34, 56. EAA argues that this provision was a general notice requirement, which applied to the other provisions in the lease that allowed cancellation for cause. However, applying the 180-day notice requirement to those for-cause cancellation provisions would create ambiguities about how much notice was required depending on the reason for termination. *See McGary*, 99 Wn.2d at 285. Under Articles 5 and 23, the landlord was required to provide either 10 or 30 days' notice, respectively, before it could reenter and take possession based on the tenant's breach of different covenants. Under Article 24, the tenant was required to provide either 60 or 90 days' notice before they could cancel the lease based on the landlord's breach or actions by the government, respectively. No notice was required for the landlord to cancel based on the tenant's bankruptcy or for the tenant to cancel based on abandonment or force majeure.

Applying the 180-day notice requirement from Article 1 to those for-cause provisions would create conflicts with the notice periods specified in the for-cause provisions. That ambiguity can be avoided by reading the contract as a whole; each clause that provided a basis for termination also specified how much (if any) notice would be required for termination on that basis. *Id.* The 180-day notice requirement

in Article 1 applied to an at-will, no-fault right to termination for both parties, distinct from other provisions allowing for termination for cause. The Airport properly canceled the lease under Article 1 when it provided 180 days' written notice that the lease would terminate, and the lease ended on August 17, 2018.

B.      Unlawful Detainer

Next, we must determine whether an unlawful detainer action under RCW 59.12.030(1) was available when EAA remained in Building 7 after August 17, 2018. We hold that it was. RCW 59.12.030(1) is not limited to circumstances when the original commercial lease period expires. Instead, parties to a lease can contract to change the lease term, and a tenant becomes a holdover when they remain after the modified (or unmodified) term expires. Reading the contract and the statute together to come to any other conclusion would violate the plain language construction of both.

The unlawful detainer action under chapter 59.12 RCW provides an expedited method for resolving the right of possession and "hastening recovery of possession of real property." *MacRae v. Way*, 64 Wn.2d 544, 546, 392 P.2d 827 (1964). "[T]he superior court sits as a special statutory tribunal, limited to deciding the primary issue of right to possession together with the statutorily designated incidents thereto, i.e., restitution and rent or damages." *Id.* The unlawful detainer action is designed to provide an efficient summary proceeding to "remove the necessity to which the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

landlord was subjected at common law, of bringing an action of ejectment with its attendant delays and expenses." *Wilson v. Daniels*, 31 Wn.2d 633, 643-44, 198 P.2d 496 (1948); *cf.* ch. 7.28 RCW. "However, in order to take advantage of its favorable provisions, a landlord must comply with the requirements of the statute." *Terry*, 114 Wn.2d at 563-64.

Under RCW 59.12.030(1), in a tenancy for a term of years, a tenant becomes liable for unlawful detainer when they hold over in possession of the premises "after the expiration of the term for which it is let to him or her." A tenancy for a term of years terminates "without notice at the expiration of the specified term or period." RCW 59.12.030(1). Other provisions of the unlawful detainer statute apply when the tenant holds over at the end of a periodic tenancy, defaults in rent, or breaches other lease covenants; those provisions impose notice requirements before the landlord can commence an unlawful detainer action. *See* RCW 59.12.030(2), (3), (4). While the notice and opportunity to cure requirements under those provisions must be strictly construed in favor of the tenant, subsection (1) imposes no requirements other than requiring that the term of the lease has expired. *Terry*, 114 Wn.2d at 563, 569; *Sav. Bank of Puget Sound v. Mink*, 49 Wn. App. 204, 207, 741 P.2d 1043 (1987).

In *FPA Crescent*, a landlord tried to avoid the notice and opportunity to cure requirements of a different provision of the unlawful detainer statute, RCW

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

59.12.030(3), by declaring the lease terminated when the tenant defaulted in rent payments. 190 Wn. App. 666. There, the lease agreement "defined the 'lease term' as beginning on the commencement date and ending on the expiration date, unless terminated sooner pursuant to the express terms and conditions of the lease." *Id.* at 669. The lease agreement permitted the landlord to terminate the lease upon the event of the tenant's default in rent, but it apparently did not include a no-fault or at-will termination clause. *Id.* When the tenant failed to timely pay the rent, the landlord served them with a notice stating that the lease was terminated, effective immediately, pursuant to the default provision of the lease. *Id.* at 669-70. The landlord rejected the tenant's attempts to cure the default and filed an unlawful detainer action with a general citation to RCW 59.12.030. *Id.* at 670.

The issue became whether subsection (1) applied because the tenant was a holdover or whether subsection (3) applied because the tenant defaulted in rent; subsection (3) required the landlord to provide 14 days' notice and an opportunity to cure before the tenant could be liable for unlawful detainer. RCW 59.12.030(3). The Court of Appeals held that the landlord could not "bypass the notice and right to cure provision of [subsection](3) by declaring a tenant in default for nonpayment of rent, then terminating the tenancy, and then arguing that the tenant is a holdover tenant unlawfully detaining under [subsection](1)." *FPA Crescent*, 190 Wn. App. at 668. The court consulted the dictionary definitions of the terms "expiration" ("'[t]he

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ending of a fixed period of time'") and "let" ("'[t]o offer (property) for lease'") and concluded that a tenant becomes a holdover under RCW 59.12.030(1) only if they remain in possession of the property "past the fixed period of time for which the property is leased." *Id.* at 676-77 (alterations in original) (quoting BLACK'S LAW DICTIONARY 700, 1043 (10th ed. 2014)). Thus, the tenant had not become a holdover when they defaulted in rent because the fixed term of the lease agreement had not expired. *Id.* at 677.

In contrast, in this case, subsection (1) of the unlawful detainer statute was the only provision available to the landlord because the tenant had not breached any covenant of the fixed-term lease. *Compare* RCW 59.12.030(2) (holdover in a periodic tenancy), *and* .030(3) (nonpayment of rent), *and* .030(4) (breach of other covenants), *and* .030(5) (waste), *and* .030(6) (trespass), *with* .030(7) (gang-related activity). The Airport did not seek to avoid the notice requirements of any other provision of the unlawful detainer statute. Instead, the Airport exercised its right to modify the term of the lease under Article 1 and then pursued the only pertinent unlawful detainer action under RCW 59.12.030(1).

In *FPA Crescent*, the court was concerned with a landlord avoiding the notice and opportunity to cure requirements of the applicable provision of the unlawful detainer statute by simply declaring the lease terminated and seeking relief under subsection (1). But part of the rationale in that case was that in light of the statute's

13

purpose to provide landlords with an expedient method of recovering possession without resorting to self-help or having to maintain a more costly and time-consuming ejectment action, "'[i]t is no hardship to require the giving of the statutory notice as a condition precedent to invoking the benefit of the statutory remedy.'" *FPA Crescent*, 190 Wn. App. at 678 (quoting *Jeffries v. Spencer*, 86 Wash. 133, 136, 149 P. 651 (1915)). *But no notice is required under the provision for a holdover tenant in a fixed-term tenancy*. RCW 59.12.030(1) ("[T]he tenancy shall be terminated without notice at the expiration of the specified term or period."). That provision does not contemplate any obligations of the landlord or any condition precedent, other than the end of the tenancy.

When a party properly exercises an option to terminate the lease, the lease terminates on the specified date and the leasehold ceases to exist. *State v. Sheets*, 48 Wn.2d 65, 68, 290 P.2d 974 (1955). In addition to being consistent with *FPA Crescent*, this analysis comports with landlord-tenant law more generally. A lease for a "fixed maximum duration" may be "automatically terminated earlier upon the happening of an event or contingency. Just as freehold estates may be subject to defeasance, so also an estate for years can be created subject to a special limitation, a condition subsequent, an executory limitation, or an option to terminate." ROBERT S. SCHOSHINSKI, AMERICAN LAW OF LANDLORD & TENANT 41-42 (1980) (citing, inter alia, *Peoples Park & Amusement Ass'n*, 200 Wash. 51) (footnotes omitted); *see*

*also* WILLIAM B. STOEBUCK & DALE A. WHITMAN, THE LAW OF PROPERTY 402 (3d ed. 2000) ("'Surrender' is the early termination of a leasehold by either the parties' agreement or by. . . 'operation of law.' Surrender by agreement is like modification or cancellation of a contract.").

For over half a century, this court has recognized that the term expires and the leasehold ceases to exist when a lease terminates early according to the terms of the agreement. In *Sheets*, a lease agreement provided that the lease could be canceled by either party in the event the premises were condemned and taken over by a governmental body. 48 Wn.2d at 66. When the State commenced an action to condemn the property, the landlord notified the tenant that the lease was canceled, pursuant to that provision. *Id.* When the tenant later sought to recover a portion of the compensation for the condemnation, this court held that his right to share in the compensation—a right created by the tenancy—was terminated by the landlord's exercise of the cancellation provision: "When a written lease provides that the taking . . . of the leased property may terminate the lease at the option of either party, *the term expires* when such taking occurs and the option is exercised, and *no unexpired leasehold remains* for which the lessee can claim compensation." *Id.* at 68 (emphasis added); *see also W. Union Tel. Co. v. Hansen & Rowland Corp.*, 166 F.2d 258, 262 (9th Cir. 1948) (the expiration of a lease terminates the tenancy). An option to

terminate operates similarly, ending the leasehold when it is exercised. SCHOSHINSKI, *supra*, at 41-42.

Given that a no-fault early termination provision is valid and enforceable, and no notice is required to terminate a fixed-term tenancy, landlords and tenants will expect early termination provisions to be enforceable under the unlawful detainer statute. RCW 59.12.030(1); *Lane*, 101 Wn. App. at 883. It would be contrary to the plain language and purpose of the unlawful detainer statute to require a landlord to wait until the (no longer applicable) original term expires or else bring an ejectment action when a tenant holds over after the lease lawfully terminates early. Additionally, under the plain language of the lease agreement between the Airport and EAA, the lease term would end February 28, 2021, unless sooner terminated or canceled under the agreement—which allowed either party to cancel with 180 days' written notice. When the Airport gave proper notice that the lease would terminate, it modified the term of the lease, pursuant to Article 1. Thus, EAA became a holdover tenant when it remained in Building 7 after the fixed term expired on August 17, 2018. *FPA Crescent*, 190 Wn. App. at 677.

Therefore, we hold that a tenant in a fixed term commercial lease becomes a holdover tenant liable for unlawful detainer when they remain in possession "after the expiration of the term for which it is let," whether that term is the period fixed in the original lease agreement or as modified pursuant to an early termination

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

provision. RCW 59.12.030(1). The trial court properly granted the Airport's motion for summary judgment on the matter of unlawful detainer. We reverse the Court of Appeals.

C. Attorney Fees

The Airport is entitled to an award of attorney fees and costs on appeal. RAP 18.1. Article 26 of the lease agreement entitled the prevailing party to recover reasonable attorney fees in a legal action to enforce the agreement. The trial court granted the Airport's motion for summary judgment on the issue of unlawful detainer and reserved the issues of damages and attorney fees because factual disputes remained as to the amount of the Airport's damages. Therefore, we remand to the trial court to determine the amount of fees to award to the Airport. RAP 18.1(i).

## III. CONCLUSION

The holdover tenant provision of the unlawful detainer statute is not limited to the expiration of the term specified in the original lease agreement but, instead, also applies when a party exercises their agreed-upon right to modify that term. Therefore, EAA became a holdover tenant under RCW 59.12.030(1) when it remained in possession of the premises after the Airport gave 180 days' notice and the lease terminated on August 17, 2018. We reverse and remand to the trial court to determine the Airport's award of damages and attorney fees.

*Spokane Airport Bd. v. Experimental Aircraft Ass'n Ch. 79*
No. 99180-4

_____
Montoya-Lewis, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Whitener, J.