IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KING COUNTY, a political subdivision of the State of Washington, | No. 82671-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ABDULHAFID TAHRAOUI, individually, and AMANA GLOBAL COMPANY, a sole proprietorship, | |
| Appellants. | |

HAZELRIGG, J. — Abdulhafid Tahraoui, owner of Amana Global Company, appeals an order authorizing the issuance of a writ of restitution and orders denying reconsideration or vacation of the writ. Finding no error, we affirm.

FACTS

In December 2015, Tahraoui signed a five-year commercial lease agreement for Amana Global Company to occupy a portion of a warehouse and an adjacent fenced storage yard at 22230 Russell Road in Kent (the Property). The lease was set to expire on August 31, 2021, but automatically terminated upon condemnation, by its own terms.

In May 2016, King County purchased the Property in order to construct the Lower Russell Levee Setback Project. The County determined that Tahraoui was a displaced person eligible for relocation benefits authorized by the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Act ("Uniform Act"), 42 U.S.C. § 4621, and the

Washington State Relocation Assistance Act ("Relocation Act"), chapter 8.26 RCW, and chapter 468-100 WAC. In August 2016, King County sent Tahraoui a letter notifying that he: (1) was eligible for relocation assistance, (2) would need to move from the Property, but would "not be required to vacate the property before December 5, 2016, which is at least 90 days from the date you receive this letter," and, (3) was entitled to moving and reestablishment expenses.

Thereafter, King County and Tahraoui began disputing the amount of his relocation benefits. In January 2017, King County sent Tahraoui a second letter of eligibility, entitlements, and a 90-day notice to vacate, which instructed that he would not be required to vacate before April 30, 2017. While the parties continued negotiations until mid-2018, they could not agree on terms for Tahraoui's voluntarily relocation. By the end of negotiations, Tahraoui was seeking at least $1.4 million in relocation expenses.

In July 2018, King County, along with the King County Flood Control Zone District, filed a petition for condemnation seeking to appropriate Tahraoui's leasehold interest in the Property. Over a year later, in November 2019, the trial court entered a "Stipulated Final Judgment and Decree of Appropriation in Condemnation and Order of Disbursement" (the Decree) that, among other things, terminated any leasehold interest Tahraoui had to the Property as of November 12, 2019. Tahraoui sought discretionary review of that order, but this court denied his request and our Supreme Court denied his petition for review for lack of standing.[1]

---

[1] See King County v. Amana Global Company, No. 80877-0-I (January 28, 2020 ruling denying review), review denied, No. 98797-1 (September 11, 2020 ruling denying review). In April

On November 22, 2019, King County served Tahraoui with a notice to vacate, requiring him to leave the Property by December 31, 2019.  King County also noted that if Tahraoui failed to comply with this notice, it would commence an unlawful detainer action.  Tahraoui, however, refused to vacate.

In January 2020, King County filed a complaint for unlawful detainer and an eviction summons, seeking a writ of restitution directing the sheriff to restore possession of the Property to King County as well as a judgment against Tahraoui for its attorney fees and related costs.  Two weeks later, Tahraoui filed an answer to the unlawful detainer complaint and raised affirmative defenses of retaliation and King County's failure to pay his relocation benefits under both the Uniform and Relocation Acts.

King County did not immediately request a show cause hearing in the unlawful detainer action but, instead, resumed negotiations with Tahraoui to voluntarily relocate.[2]  In the summer of 2020, Tahraoui executed a lease at a facility in Chehalis, and King County committed to paying his moving expenses: up to $50,000 in reestablishment expenses, $32,500 for the first four months of rent and utilities at the new facility, and $2,500 for site search expenses.  To aid him in securing the new facility, King County made an advance payment to Tahraoui of $41,250 prior to executing the new lease, and a second payment of $41,250 to Tahraoui before he had made any improvements to the new facility, but

_____

2019, another entity acquired Tahraoui's leasehold interests and later reached an agreement with King County on the Decree to conclude the condemnation matter.

[2] Tahraoui's briefing suggests that he administratively appealed the King County's initial relocation expenses determination to the King County Water and Land Resources Division.  None of these materials were presented to the trial court in the unlawful detainer action.

- 3 -

conditioned on his signing of a new lease elsewhere. Despite King County agreeing to provide $85,000 to compensate for relocation expenses, Tahraoui remained on the Property.

In February 2021, a trial court commissioner issued an order requiring Tahraoui to appear for a hearing to show cause why a writ of restitution restoring King County to possession of the Property should not be issued.

On March 12, 2021, the commissioner issued an order (1) finding that the Decree, entered in November 2019, appropriated Tahraoui's leasehold, which entitled King County to have Tahraoui evicted from the Property, (2) instructing the court clerk to issue a writ of restitution directing the sheriff to evict Tahraoui, (3) declining to award King County costs and fees, and (4) concluding that the balance of King County's claims, "including but not limited to losses that may accrue from unpaid past or future rent or physical damage or destruction to the Premises and other damage flowing directly or indirectly from Defendants' actions are preserved" for a future hearing. Four days later, the trial court clerk issued a writ of restitution (the Writ) directing the King County Sheriff to evict Tahraoui from the Property.

On March 22, 2021, the sheriff posted the Writ at the warehouse on the Property. That same day, Tahraoui filed a motion seeking revision of the commissioner's decision and to vacate the judgment, quash the Writ, and dismiss the unlawful detainer action entirely. He also filed an emergency motion requesting a stay of execution of the Writ until the hearing of his motion for reconsideration, which was scheduled for April 23, 2021. On March 24, 2021, a

commissioner issued an order staying execution of the Writ until April 23, contingent on Tahraoui posting a $30,000 bond, which he immediately did.

On April 23, 2021, the trial judge heard oral argument on the motion for revision. A week later, the judge issued an order denying Tahraoui's motion for revision, affirming the commissioner's issuance of the Writ and judgment against Tahraoui, and extending the stay of execution of the Writ, at Tahraoui's request, until May 7, 2021.[3] The judge ordered that Tahraoui's "remaining rights and claims" against King County were "preserved and specifically reserved," but also expressly affirmed the Commissioner's prior rejection of his asserted defense of retaliation and argument that "failure to provide relocation benefits is a defense to an unlawful detainer action." Tahraoui filed a motion for reconsideration of the order denying revision, but the judge denied it.

After Tahraoui failed to post a bond to further extend the stay of execution, the sheriff evicted Tahraoui from the Property on May 10, 2021. The next day, Tahraoui filed an emergency motion before another trial court commissioner asking that the Writ be vacated and that he be restored to possession of the Property. After the commissioner denied the motion to vacate, Tahraoui timely appealed.

## ANALYSIS

### I. Mootness

At the outset we address King County's motion to dismiss this appeal as moot. King County contends that this court cannot provide the relief Tahraoui

---

[3] The order required Tahraoui to post a $250,000 bond by May 7, 2021 in order to extend the stay of execution of the Writ beyond May 7, 2021.

seeks which, it claims, is possession of the warehouse on the Property that was destroyed during the summer of 2021.

"A case is technically moot if the court cannot provide the basic relief originally sought, or can no longer provide effective relief." Snohomish County v. State, 69 Wn. App. 655, 660, 850 P.2d 546 (1993) (citation omitted). Lack of possession does not necessarily moot an unlawful detainer action. Hous. Auth. of City of Pasco & Franklin County v. Pleasant, 126 Wn. App. 382, 388, 109 P.3d 422 (2005). When a tenant does not concede the right of possession, which is the case here, the tenant has the right to have the issue determined. Id. at 389. Moreover, if a tenant has a monetary stake in the outcome of the case, like the judgment entered against Tahraoui, our Supreme Court has said that "[o]bviously [such a] case is not moot." McGary v. Westlake Invs., 99 Wn.2d 280, 284, 661 P.2d 971 (1983).

Because the trial court entered a judgment against Tahraoui and he seeks relief beyond restoration of possession, this case is not moot. Thus, we will consider the merits of this appeal. Tahraoui raises numerous assignments of error. We address them individually, though in an order different than that set out in briefing.

II.    Termination of the Lease Agreement

Notwithstanding the condemnation action, in which the trial court appropriated the leasehold interest in the Property to King County, Tahraoui contends that the lease agreement did not terminate according to its terms. We disagree.

"Leases are conveyances whose covenants are interpreted under contract law." Lane v. Wahl, 101 Wn. App. 878, 883, 6 P.3d 621 (2000). We interpret contracts as matters of law and review them de novo. Kim v. Moffett, 156 Wn. App. 689, 697, 234 P.3d 279 (2010).

When interpreting an agreement, we attempt "to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). We give words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Id. at 504. We interpret only what was written in the agreement, not what the parties intended to write. Id. Additionally, "[a] contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). We do "not read ambiguity into a contract 'where it can reasonably be avoided.'" Id. at 135 (quoting Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995)) (internal quotation marks omitted).

Here, the lease agreement terminated by its terms, upon condemnation, as set forth in section 14(b):

> **Condemnation.** If the Premises are made untenantable by eminent domain, or conveyed under a threat of condemnation, this Lease shall automatically terminate as of the earlier of the date title vests in the condemning authority or the condemning authority first has possession of the Premises and all Rents and other payments shall be paid to that date.

Tahraoui argues that, because King County condemned only his "leasehold," not "the Premises" upon which the leasehold sits, the lease agreement remains valid. But Tahraoui ignores the fact that in one of his prior appeals concerning the Property at issue in this matter, this court explained:

> [I]n July 2018, King County brought a condemnation action against Amana [Global Company] to acquire its leasehold interest in a parcel of land. The [trial] court entered findings of fact and conclusions of law, determining that the land under leasehold was needed to construct and operate a flood control project. The court subsequently denied Amana's motion for reconsideration, because "the condemnation of the real property interest is for flood protection (capital project). The project secondarily provides for salmon habitat restoration."

Pan Abode Homes, Inc. v. Abdulhafid, No. 79670-4-I, slip op. at 12 (Wash. Ct. App. June 15, 2020), https://www.courts.wa.gov/opinions/pdf/796704.pdf.

The record reflects that the land under the leasehold was condemned on November 12, 2019. Therefore, the condemnation provision under section 14(b) was triggered as of that date and, in turn, automatically terminated the lease agreement.

III.    Notice to Vacate

After the lease was terminated, King County gave Tahraoui a 30-day notice to vacate the Property. Tahraoui contends that he was entitled to a 90-day notice to vacate and, absent such notice, the trial court lacked authority to exercise jurisdiction over this matter. He is incorrect.

Tahraoui cites the Uniform Act's regulations under 49 C.F.R. § 24.203(c), and the regulations for Washington's Relocation Act, WAC 468-100-203(3), to support his contention. "We interpret regulations, like statutes, de novo." Yaron

v. Conley, 17 Wn. App. 2d 815, 825, 488 P.3d 855 (2021). "'When interpreting an administrative regulation, we follow the general rules of statutory construction.'" Id. at 825 (quoting Clark v. City of Kent, 136 Wn. App. 668, 672, 150 P.3d 161 (2007)). "'In judicial interpretation of statutes, the first rule is the court should assume that the legislature means exactly what it says. Plain words do not require construction.'" State v. McCraw, 127 Wn.2d 281, 288, 898 P.2d 838 (1995) (quoting Sidis v. Brodie/Dohrmann, Inc., 117 Wn.2d 325, 329, 815 P.2d 781 (1991)) (internal quotation marks omitted).

The regulations upon which Tahraoui relies contain nearly identical language. Compare 49 C.F.R. § 24.203(c)(1) (2019) ("No lawful occupant shall be required to move unless he or she has received at least 90 days advance written notice of the earliest date by which he or she may be required to move.") with WAC 468-100-203(3)(a) ("No lawful occupant shall be required to move unless the occupant has received at least ninety days advance written notice of the earliest date by which he or she may be required to move."). These regulations also similarly define "unlawful occupant" as "[a] person who occupies without property right, title or payment of rent or a person legally evicted, with no legal rights to occupy a property under State law." 49 C.F.R. § 24.2(a)(29) (2019); WAC 468-100-002(29).

King County satisfied these regulations. On two separate occasions King County provided Tahraoui more than 90 days' notice to vacate the Property, while he lawfully occupied the Property according to the terms of the lease agreement. But when the lease terminated, as Tahraoui now acknowledges, "all [of his] rights,

title and interest in the leasehold were acquired" by King County. Accordingly, Tahraoui no longer had any right or title to occupy the Property and became an "unlawful occupant," who was not entitled to further notice, under both the Uniform and Relocation Act. Because King County was not required to give Tahraoui another 90-day notice to vacate before filing its unlawful detainer action, the trial court's exercise of jurisdiction over the matter was proper.

IV.     Unlawful Detainer

Tahraoui asserts that the unlawful detainer action was improper. We disagree.

King County brought its action under RCW 59.12.030(1), which provides that, in a tenancy for a term of years, a tenant becomes liable for unlawful detainer "[w]hen he or she holds over or continues in possession . . . of the property or any part thereof after the expiration of the term for which it is let to him or her." It further states, "[w]hen real property is leased for a specified term or period by express or implied contract, whether written or oral, the tenancy shall end without notice at the expiration of the specified term or period." RCW 59.12.030(1).

Here, Tahraoui avers he was not a "holdover" tenant because the terminal date fixed by the lease agreement, August 31, 2021, had not passed in January 2020, thus unlawful detainer under RCW 59.12.030(1) was not applicable.

Our Supreme Court's decision in Spokane Airport Board v. Experimental Aircraft Association, Chapter 79 is dispositive on this issue. 198 Wn.2d 476, 495 P.3d 800 (2021). There, a tenant entered into a five-year commercial lease agreement to rent an aircraft hangar. The lease contained a 180-day cancelation

provision. The landlord later provided the tenant notice that it was canceling the lease with 180 days' notice, which was eventually extended to August 17, 2018. Id. at 479-81. The tenant remained in the hangar after that date and the landlord filed a complaint for unlawful detainer under RCW 59.12.030(1). The trial court issued an order authorizing a writ of restitution and later ruled, on summary judgment, that the lease term expired after the 180-day notice to cancel and the tenant was liable for unlawful detainer when it held over after that time. Id. at 481-82.

On review, our Supreme Court addressed whether an unlawful detainer action under RCW 59.12.030(1) was available when the tenant remained in the hangar building after August 17, 2018. Id. at 485. It held that "a tenant in a fixed term commercial lease becomes a holdover tenant liable for unlawful detainer when they remain in possession 'after the expiration of the term for which it is let,' whether that term is the period fixed in the original lease agreement or as modified pursuant to an early termination provision." Id. (quoting RCW 59.12.030(1)).

The facts of this case and Spokane Airport are similar.[4] Here, Tahraoui entered into a fixed term commercial lease, which contained a provision that

---

[4] Tahraoui offers only a cursory reference to Spokane Airport in his reply brief and does not address the factual similarities between that case and this appeal.

Further, on September 29, 2022, he submitted a motion for an extension of time to file his reply brief, which was granted. He submitted his reply on October 13, 2022 and certified that the brief "contains 6400 or less words, not in compliance with the Rules of Appellate Procedure." (Emphasis added). RAP 18.17(c)(3) establishes a length limitation of 6000 words for reply briefs. The October 13 reply was rejected by the Clerk's Office.

On October 14, 2022, Tahraoui filed an amended reply brief with a certification that it "contain[ed] 6500 or less words, not in compliance with the Rules of Appellate Procedure." (Emphasis added). He did not file a motion for leave to file an overlength brief until October 17, 2022. While Tahraoui failed to comply with the RAP because he submitted a reply brief which did not conform to the rules before he sought leave from this court to do so, his October 17 motion is nevertheless granted.

automatically terminated the lease upon condemnation. The effect of that provision in Tahraoui's lease is similar in kind to the early termination clause at issue in Spokane Airport, as they both modified the term specified in the original lease agreement. Applying the Supreme Court's holding in Spokane Airport here, we conclude Tahraoui became a holdover tenant when he remained on the Property after the lease terminated on November 12, 2019. Id.

Tahraoui also claims that King County's only avenue for retaining possession of the Property was to pursue an ejectment action under chapter 7.28 RCW. He is incorrect. The unlawful detainer action is an alternative to an ejectment action. River Stone Holdings NW, LLC v. Lopez, 199 Wn. App. 87, 92, 395 P.3d 1071 (2017). An unlawful detainer action "relieves a landlord of having to file an expensive and lengthy common law action of ejectment." FPA Crescent Assocs. v. Jamie's LLC, 190 Wn. App. 666, 675, 360 P.3d 934 (2015).

Tahraoui has shown no procedural, or other, irregularities that would warrant reversal of the trial court's unlawful detainer order.

V.    Affirmative Defenses

Tahraoui next contends that the trial court erred at the show cause hearing by not considering his affirmative defenses of retaliation and King County's failure to pay his relocation expenses. This was not error.

A commissioner's actions are subject to revision by a trial court judge. RCW 2.24.050. "On revision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner." In re Dependency of Ca.R., 191 Wn. App. 601, 607, 365

P.3d 186 (2015).  We review a trial court's ruling on a motion for revision of a commissioner's order for abuse of discretion.  River House Dev. v. Integrus Architecture, 167 Wn. App. 221, 231, 272 P.3d 289 (2012).  "A trial court abuses discretion when its order is manifestly unreasonable or based on untenable grounds."  Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).  Once a trial court has decided the motion for revision, as was done here, we focus our review on the trial court's decision, as opposed to the commissioner's original order.  Faciszewski v. Brown, 187 Wn.2d 308, 313 n.2, 386 P.3d 711 (2016).

A trial court may address a landlord's unlawful detainer claims in a show cause hearing.  Hous. Auth., 126 Wn. App. at 390-92.  But a show cause hearing is not necessarily the time for a final determination of the parties' rights.  4105 1st Ave. S. Invs. v. Green Depot WA Pac. Coast, 179 Wn. App. 777, 786, 321 P.3d 254 (2014).  RCW 59.12.130 provides that "[w]henever an issue of fact is presented by the pleadings it must be tried by a jury."

In unlawful detainer actions under chapter 59.12 RCW, trial courts sit "'as a special statutory tribunal, limited to deciding the primary issue of right to possession together with the statutorily designated incidents thereto, i.e., restitution and rent or damages.'"  Spokane Airport, 198 Wn.2d at 485 (quoting MacRae v. Way, 64 Wn.2d 544, 546, 392 P.2d 827 (1964)).  Issues unrelated to possession cannot be resolved in an unlawful detainer action and must be addressed in a civil action.  Angelo Prop. Co. v. Hafiz, 167 Wn. App. 789, 809, 274 P.3d 1075 (2012).  Thus, the trial court did not abuse its discretion when it

"preserved and specifically reserved" Tahraoui's affirmative defense claims against King County.[5]

## VI. Administrative Dismissal

King County filed its unlawful detainer complaint in January 2020 and then filed its motion for an order to show cause in February 2021. The show cause hearing was held in March 2021. Tahraoui claims that the action should have been administratively dismissed due to King County's failure to comply with King County Superior Court Local Civil Rule (KCLCR) 41(b)(2)(G). Under KCLCR 41(b)(2)(G), if no action is taken within 45 day of filing an unlawful detainer action "and no future hearing date is scheduled, then the case may be administratively closed by the clerk." This rule gives the trial court clerk discretion to dismiss such matters, but it does not mandate that the clerk dismiss them. See Vaughn v. Chung, 119 Wn.2d 273, 281, 830 P.2d 668 (1992) (the word "may" means something is permissible, while the word "shall" indicates something is mandatory). Here, the clerk elected not to dismiss this action. There was no error.

## VII. Vacation of the Writ

Finally, Tahraoui contends that the Writ was unenforceable and the trial court commissioner should have vacated it.[6] Specifically, he argues that the Writ

---

[5] Although Tahraoui challenges this ruling as well, for the same reasons, we conclude that the trial court did not err in preserving any of King County's remaining claims in the unlawful detainer action for further proceedings.

[6] Tahraoui did not move to revise the order denying his motion to vacate, so it became a final order of the trial court. RCW 2.24.050.

expired after the sheriff failed to return it within 20 days of its issuance on March 16, 2021. The record does not support this contention.

Under RCW 59.12.090, a writ of restitution is required to "be return[ed] in twenty days after its date" of issuance by the trial court clerk. Here, the sheriff posted the Writ at the Property on March 22, 2021, seven days after the Writ was issued. But, upon multiple motions and posting a $30,000 bond, Tahraoui stayed execution of the Writ between March 24 and May 7, 2021. Within three days of the stay expiring on May 10, 2021, the sheriff evicted Tahraoui from the Property. On May 12, 2021, the sheriff filed the return of service of the Writ.

Based on these facts we conclude that the Writ was returned within the time prescribed by RCW 59.12.090 and Tahraoui failed to present any grounds to vacate the Writ.

The trial court's orders are affirmed.[7]

WE CONCUR:

_____

_____          _____
Chung, J.                        Smith, A.C.J.

---

[7] On October 20, 2022, Tahraoui filed "Appellants' RAP 10.8 Statement of Additional Authorities." Under RAP 10.8(b), the body of the statement of additional authorities "must not exceed 350 words." Tahraoui's filing exceeds the 350-word limit established by the RAP. Because his filing does not comply with RAP 10.8(b), we do not consider it.